IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| BARBARA WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL CASE NO: 3:12-cv-00024 |
| | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; THE BOARD OF THE | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; MAX HARCOURT, in his | ) | |
| personal capacity; ALFRED FELICE; | ) | |
| LANCE TALKINGTON ROBERT | ) | |
| COCKAYNE;VINCENT VERDIRAMO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**DEFENDANTS COWPET BAY WEST CONDOMINIUM ASSOCIATION AND THE BOARD OF COWPET BAY WEST CONDOMINIUM ASSOCIATION'S MOTION FOR SUMMARY JUDGMENT AS TO COUNTS I, III, VI, VII, VIII, XIII, IVX, XVII OF THE SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW PURSUANT TO FED. R. CIV. P. 56 AND LOCAL RULE 56.1**

Defendants, Cowpet Bay West Condominium Association and The Board of Cowpet Bay West Condominium Association, (collectively herein, "Defendants") by and through their undersigned counsel, submit this Memorandum of Law in support of their Motion for Summary Judgment on the Complaint filed by Plaintiff, Barbara Walters ("Plaintiff")(Deceased), and move this Honorable Court for entry of Final Summary Judgment in their favor against Plaintiff. In support, the Defendants state the following:

## I.     INTRODUCTION

This matter stems from a baseless quarrel amongst residents at Cowpet Bay West Condominium Association regarding Plaintiff's accompaniment of a dog while she resided at her unit in Cowpet Bay West. An action, on its face and to all residents who observed same, that was in violation of the No Dogs Rule at Cowpet Bay West. However, Plaintiff, without

informing the Defendants of her non-obvious disability and need for an emotional support animal and after covertly submitting some paper work to the property manager with instructions to keep the contents of the paper work confidential, walked around Cowpet for several months with her dog without answering to anyone.  Finally, in October of 2011, after several requests from residents, then president of Defendants, Max Harcourt, wrote Plaintiff asking Plaintiff to submit either in writing or electronically to the Board, a request for an exception to the no dog rule with supporting documentation.  Plaintiff refused to submit her medical verifications to the Defendants for consideration until March 2012, when she provided newly elected board president, Ed Wardwell, with a request for an emotional assistance animal and copy of medical certification establishing her medical need for an emotional assistance animal.  On March 26th, 2012, the board of directors reviewed the documents provided by Plaintiff and agreed to allow Plaintiff to maintain her dog in her condominium unit.

On April 11, 2012, Plaintiff received confirmation from the Defendants, via letter, that the Board conducted a confidential review of her medical certifications and that the Defendants agreed to provide Plaintiff an exception to the No Dog policy and a waiver of any fines assessed to Plaintiff's unit as a result of the perceived violation of the No Dog policy.

Nevertheless, we are now hear two years after Plaintiff's formal request for accommodation was granted and with three deceased parties (Plaintiff, Max Harcourt and Alfred Felice).  In just over two years, Plaintiff has conducted no discovery in this matter and due to Plaintiff's death and lack of any sworn statements or testimony, Plaintiff cannot establish any existence of an element essential to her case.  As such, pursuant to Fed. R. Civ. P. 56, there can be no genuine issue to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Thus, Defendants are entitled to summary judgment.  As will be discussed more fully below, Plaintiff's claims are neither supported by the evidence nor can they now be advanced due to Plaintiff's death.  The undisputed material evidence shows: (1) Defendants never refused to accommodate Plaintiff's dog; (2) Plaintiff was never prevented access or use of her unit with her dog in accompaniment; (3) Defendants did not interfere with her Fair Housing Rights; (4) Cowpet Bay West is not a place of public lodging and not subject to the ADA; (5) Defendants properly amended the By-Laws in 2012; (6) the No Dog rule has been in place as least as of 2007, when the bylaws incorporated the no dog rule found in the Cowpet Bay West rules and regulations; (7) none of the conduct supported by the undisputed facts is severe or outrageous and (8) none of Plaintiff's private facts were ever published by the Defendants.

## II.      UNDISPUTED MATERIAL FACTS

1.      December 20, 2007, The By-Laws of Cowpet Bay West Condominium Association are issued. (See Exhibit "1" attached hereto)  Exhibit I of the By-Laws are the Rules and Regulations for Cowpet Bay West.  Including in these rules is Rule 6. "Dogs and farm animals are prohibited and owners will be fined as specific by the Board of Directors."

2.      On March 11, 2010 Plaintiff, as a board member of Cowpet, introduced a petition initiated by Windward # 12 with supporting signatures of several owners to permit dogs (subject to certain caveats) on CBW property.  No mention of a companion pet was made.  (See Exhibit "2" attached hereto)

3.      On October 13, 2011, in response to a post on the blog titled "Bylaws and Puppy Dogs", Plaintiff posted four replies at 11:25 a.m., 11:40 a.m. 12:19 pm and 12:21 p.m.  In her first reply indicated she was a person with a disability and discussed laws related to exceptions to the "no pets" rule.  In her second reply, Plaintiff indicated that she was on permanent disability,

which was documented by the social security office.  In her third reply, Plaintiff replying to Mr. Talkington regarding his request for copies of her paperwork.  In her last reply, Plaintiff indicated that Mr. Talkington did not have to agree to her need for an emotional support animal. (See Exhibit "3" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000230-000232.)

4.      On October 20, 2011, resident Susan Anderson wrote an email to the Board regarding Ms. Kromenhoek walking with a large dog on the Cowpet Bay West property.  Dr. Anderson requested the Board to take action regarding the perceived violations of the no dog rule. This email was forwarded by Plaintiff to Ms. Kromenhoek on the same day (See Exhibit "4" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000233.)

5.      On that same day, Max Harcourt, as then President of the Cowpet Bay West Condominium Association, responded to Dr. Anderson's email and indicated that the current rules and regulations are very clear and prohibit dogs.  Mr. Harcourt indicated that fines should be levied which could be mitigated if the offenders would submit appropriate paperwork regarding the dog.  (See Exhibit "5" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000234.)

6.      Plaintiff responded to Mr. Harcourt's email and CC'd Ms. Kromenhoek.  Plaintiff stated "I don't think that would be a problem, but the information must be kept confidential, or else the board member who discloses any information should himself/herself be subjected to fine or suit or both."  (See Exhibit "5" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000234.)

7.      On October 26, 2011, resident and defendant, Lance Talkington sent an email to the Cowpet Bay West Board of Directors requesting enforcement of the Rules and Regulations

regarding the perceived violations by residents of the no dogs rule. (See Exhibit "6" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000238).

8.      On October 27, 2011, Plaintiff, sent an email to the Board indicating that she had paperwork on file in the office, but her medical information is no one's business.  Plaintiff failed to respond or write to the board to inform the Defendants that she also allegedly had medical verifications on file in her file at the office. (See Exhibit "7" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000236-000237).

9.      On October 28, 2011, Max Harcourt, wrote an email to Plaintiff and Judith Kromenhoek, reminding them that there is a no dogs rule at Cowpet and that they are in violation of the rule.  Mr. Harcourt confirmed that Louanne Schechter informed him that they had "papers in the office" regarding service dogs, but that they had not applied for an exception to the rule. Mr. Harcourt then provided Plaintiff and Ms. Kromenhoek 10 days to submit a request for supporting documentation for an exception to the no dog rule.  (See Exhibit "8" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000242).

10.      On that same day, Plaintiff responded to Mr. Harcourt and the Board indicating that she was notifying the Board that she was in possession of a service dog, but did not provide any of her medical certifications to the board for review.   (See Exhibit "9" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 000240-000241).

11.      On December 16, 2011, Plaintiff's counsel sent a letter to Max Harcourt indicating that Plaintiff was disabled and qualified to keep her dog in her unit.  Par for the course, Plaintiff's counsel did not offer any evidence or documentation to support Plaintiff's disability.  This was not a valid request for an accommodation as a condominium is entitled to review medical verifications to determine the validity of the fair housing request.  (See Exhibit

"10" attached hereto/Plaintiff's supplemental rule 26 disclosure document bates number 00089-90).

12.     After receipt of the letter from Plaintiff's Counsel, the Board met in January and decided to retain counsel for legal advice related requests for exceptions to the dog rule. (Paragraph 10 of the Affidavit of Sharon Koelher attached here to as Exhibit "15")

13.     On January 12, 2012, Plaintiff filed a Complaint with the U.S. Department of Housing and Urban Development. In that Complaint Plaintiff states that: "Thank goodness, the office manager (a former nurse) has not let these people see my file."  This demonstrates Plaintiff's acknowledgment that the Defendants had not seen the contents of her file as of January 12, 2012.  (See Exhibit "11" attached hereto)

14.     Thereafter, Plaintiff submitted her request for accommodation and medical verifications to the Board, in March 2012.  (See Exhibit "12" Final Investigative Report IV. Other Investigative Findings and paragraph 6 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

15.     On March 26th, 2012 the Board reviewed the documents provided by Plaintiff and agreed to allow the Plaintiff to maintain the dog in her condominium.  Furthermore, the Board also agreed to waive any fines assessed to the Plaintiff as a result of the perceived violation of the "No Dog Policy" (See Exhibit "12" Final Investigative Report IV. Other Investigative Findings and paragraph 9 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

16.     On April 11th, the Defendants sent a letter to Plaintiff confirming that Defendants had met for a closed door confidential review of her recently submitted medical certifications and that the Defendants had agreed to an exception to the no dogs rule.  (See Exhibit "13"

attached hereto and paragraph 11 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

17.     On June 4, 2012, U.S. Department of Housing and Urban Development dismissed Plaintiff's Complaint and determined that Plaintiff did not formally request a reasonable accommodation for her disability until March 2012.   In April 2012, upon review of these documents, Defendants granted the request.   There was no reasonable cause to believe that Defendants violated the Fair Housing Act.  (See Exhibit "14" attached hereto).

18.     The Cowpet Board neither reviewed nor discussed the content of Plaintiff's medical verification and accommodation request, until March 2012, when Plaintiff submitted same to then president, Ed Wardwell.  (See paragraph 6 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

19.     The Board became aware of Plaintiff having "paperwork" in October 2011, but was not allowed to view same per Plaintiff's instructions to the Board and to Louanne Schechter. (See paragraph 7 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

20.     The Board never prevented Plaintiff from accessing or using her unit at any time with the accompaniment of her dog. (See paragraph 8 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").

21.     The Board informed Plaintiff that the fines regarding her dog would be held in abeyance until the Board received legal counsel as to procedure to consider exceptions to the no dog rule. (Declaration of Sharon Koehler)

### III.     SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of proving that no genuine issue of material fact is in dispute.[1] A factual dispute is "material" only if it might "affect the outcome of the suit under the governing law."[2] There is only a "genuine" issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3] The court must examine the facts in a light favorable to the non-movant.[4] Furthermore, the court must resolve "all inferences, doubts and issues of credibility against the moving party."[5]

> The Supreme Court has further explained in *Celotex* that:
>
> "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[6]

The nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate *specific facts* showing that there is a genuine issue for trial."[7] Here, Plaintiff has had more than two years to conduct discovery, since the filing of the lawsuit, however, neither written discovery nor depositions have

---

[1] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 n. 10 (1986).

[2] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Id.* at 255.

[5] *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972) (citations omitted).

[6] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

[7] *Id.* at 324 (emphasis added) (internal quotations and citations omitted).

been completed by Plaintiff.  As such, Plaintiff has not and cannot establish the existence of any element essential to prove her case against these Defendants.

## IV.   MEMORANDUM OF LAW

### a.  Plaintiff Fails to Establish a Violation of 42 U.S.C. § 3604(f)(3)(B)

The Third Circuit has not provided a clear standard for reasonable accommodation claims under the FHA. As such, lacking precedent on the issue, district courts in the Third Circuit have borrowed from the standard for an FHA reasonable accommodation claim adopted in other circuits.[8] Based on these precedents, the court in *Bedell* indicated that the elements to prove such a claim are:

> **(1)** the plaintiff is suffering from a disability as defined under the FHA;
> **(2)** the defendant knew or reasonably should have been expected to know of the alleged disability and requested accommodation;
> **(3)** the requested accommodation is reasonable and necessary to afford plaintiff an equal opportunity to use and enjoy his dwelling; and
> **(4)** the defendant refused to make a reasonable accommodation.

*Id at *6;[9]*

In the instant matter, the undisputed facts unequivocally refute any possibility that (1) Plaintiff made a request for an accommodation prior to March of 2012; (2) that the Defendants knew or reasonable should have been expected to know of the alleged disability and requested accommodation; (3) Plaintiff was prevented from using and enjoying her unit with the accompaniment of her dog; and (4) Defendants refused to make a reasonable accommodation.

---

[8] *Bedell v. Long Reef Condominium Homeowners Association*, 2013 WL 6405173, (December 6, 2013, D. Virgin Island) ;*See, e.g., Bell v. Tower Mgmt. Serv., L.P.,* 2008 U.S. Dist. LEXIS 53514, at *8 (D.N.J. July 15, 2008); *Milan v. Pyros,* 2008 U.S. Dist. LEXIS 37299, at *21–22 (W.D.Pa. May 5, 2008); *United States v. Port Liberte 1 Condo Ass'n,* 2006 U.S. Dist. LEXIS 70573, at *13 (D.N.J. Sept. 20, 2006) (citing *United States v. Cal. Mobile Home Park Mgmt. Co.,* 107 F.3d 1374, 1380 (9th Cir.1997)).

[9] *see also; Overlook Mut. Homes, Inc. v. Spencer*, 415 F. App'x 617, 621 (6th Cir.2011); *Astralis Condo. Ass'n v. Sec'y, U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 67 (1st Cir.2010); *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1179 (9th Cir.2006); *Bell.*, 2008 U.S. Dist. LEXIS 53514, at *8; *Milan,* 2008 U.S. Dist. LEXIS 37299, at *21–22; *Port Liberte*, 2006 U.S. Dist. LEXIS 70573, at *13 (citing *Cal. Mobile Home,* 107 F.3d at 1380).

First, the U.S. Department of Housing and Urban Development, after their own investigation of Plaintiff's claims, determined that Plaintiff did not make a request for an accommodation until March of 2012. (See Exhibits "12" & "14" - Final Investigative Report and Dismissal of HUD Complaint attached hereto)  Plaintiff's own Complaint admitted that none of the Defendants had been allowed to view her file which included the subject "paperwork". Second, Plaintiff was never prevented or evicted from her unit for having her dog at her residence. (Paragraph 8 of the Declaration of Sharon Koehler attached hereto as Exhibit "15")

Third, the Defendants had no knowledge of the contents of any paperwork that Plaintiff submitted to the property manager of Cowpet.  (Paragraphs 6 and 7 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").   It was not until Plaintiff submitted medical certifications to the Defendants in March 2012, did the Defendants have an opportunity to review and confer, privately amongst the board, to determine whether an exception to the no dog rule was necessary.  (Paragraph 6 of the Declaration of Sharon Koehler attached hereto as Exhibit "15".)

Lastly, On March 26, 2012, the Defendants voted in a closed door session to grant Plaintiff's accommodation.  (See Exhibits "12" & "13" attached hereto and paragraph 12 of the Declaration of Sharon Koehler attached hereto as Exhibit "15".)  Thereafter, Plaintiff received written confirmation from the Defendants regarding their granting of her accommodation request. (See Exhibit "13" attached hereto.)

As such, it is undisputed that Plaintiff was never denied an accommodation/exception to the Defendants No Dog policy.   Plaintiff's own paragraph 102 of the Second Amended Complaint, confirms same.

Additionally, Plaintiff will undoubtedly argue that she submitted her application to the

Defendants in February 2011, but that the Defendants took no action until March 2012, and that this false delay has the effect of constructively denying her accommodation request.  However, there is no legal basis or support for this contention.  It is absurd to believe that secretly submitting paperwork and refusing to allow anyone to review it is considered an accommodation request.

Here, Plaintiff was never denied the accommodation she requested whether there was a delay or not.  The Ninth Circuit Court of Appeals considered similar facts to the instant matter and held that there was no denial of the requested accommodation.[10]  The *Dubois* plaintiffs sued their condominium association, two association board members, a property management company, and one of its employees for refusing to allow the plaintiffs to keep a dog in their apartment.[11]  In January 2000 one of the plaintiffs brought home a dog, and submitted to the association letters from doctors which stated that the dog assisted in treating the plaintiff's depression.  The association board granted temporary permission for the dog to remain while it considered plaintiff's request.  At all relevant times the dog remained on the premises and the association took no action to remove the dog or evict the plaintiffs.  The Ninth Circuit held that the plaintiffs had failed to establish that the association had ever refused to allow the requested accommodation and affirmed the district court's grant of summary judgment for the defendants.[12]

Additionally, the Sixth Circuit has also examined similar facts, and likewise found no violation of federal law.[13]  In *Overlook,* a mutual housing corporation provider brought a declaratory judgment action against a member family of the corporation regarding a reasonable

---

[10] *Dubois v. Association of Apartment Owners of 297 Kalakaua*, 453 F.3d. 1175 (9th Cir. 2006).
[11] *Id.* at 1177
[12] *Id.* at 1179.
[13] *Overlook Mutual homes, Inc. v. Spencer*, 415 Fed. Appx. 617 (6th Cir. 2011).

accommodation for an emotional support animal. At all relevant times the dog at issue remained with its owners on the premises and the Sixth Circuit held that there was never a refusal of the requested accommodation since the family's dog had remained on the premises throughout and the housing corporation had never sought to evict the dog's family or remove the dog.[14] The fact that Plaintiff was neither denied her accommodation nor her ability to keep her dog on the premises at all times, in a perceived violation of the No Dog rule, brings this case in line with the cases cited above.

Furthermore, in *United States* v. *Hialeah Housing Authority 418 Fed. App'x 872,* the court stated: "We have explained that 'a plaintiff must actually request an accommodation and be refused in order to bring a reasonable accommodation claim under the FHA."[15] The Court in *Hialeah Housing Authority* continues and states, "In other words, for a demand to be specific enough to trigger the duty to provide a reasonable accommodation, the defendant 'must have enough information to know of both the disability and desire for an accommodation, or circumstances must at least be sufficient to cause a reasonable [landlord] to make appropriate inquiries about the possible need for an accommodation.'[16] Again, this case is devoid of any record evidence that (1) Plaintiff made an actual request for accommodation prior to March 2012; (2) that Plaintiff provided enough information or any information to the Defendants to know of both the disability and desire for an accommodation prior to March 2012 and (3) most importantly, that the request was ever denied.

As the undisputed material facts establish conclusively that Plaintiff cannot prove the essential elements of a violation of 42 U.S.C. § 3604(f)(3)(b) claim, final summary judgment is

---

[14] *Id.* at 623-24.
[15] (citing to *Schwarz v. City of Treasure Island,* 544 F.3d at 1219.)
[16] *Colwell v. Rite Aid Corp.,* 602 F.3d 495, 506 (3d Cir.2010) (quotation marks omitted)." *Hialeah Housing Authority* at 876.

just and proper in favor of the Defendants.  Thus, Defendants Motion for Summary Judgment as to Count I of the Second Amended Complaint must be granted.

### b.  Plaintiff Fails to Establish a Violation of 42 U.S.C. § 3617

Plaintiff's Count III attempts to assert a violation of 42 U.S.C. § 3617 which makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of any right granted or protected by Section 3604 et. seq.  The 3rd Circuit in *Sporn v. Ocean Colony Condominium Association*,[17] stated:

> Section 3617 does not, however, purport to impose a code of civility on those dealing with individuals who have exercised their FHA rights. Simply put, § 3617 does not require that neighbors smile, say hello or hold the door open for each other. [18]

Plaintiff, in the instant matter asks this Court to extend § 3617 to areas of disputes that the Fair Housing Act was never intended to cover, namely disputes amongst neighbors.  There is no record evidence to support any violation of Section 3617 against these Defendants.

First, Plaintiff's asserts that the Defendants ignored her accommodation request and that the By-Laws were purposefully amended to exclude dogs like Plaintiff's dog, Happy. (See paragraph 127 of the Second Amended Complaint.)  However, the record evidence and undisputed facts demonstrate that the Defendants did not ignore her application, as they were not aware of any application or the contents of the medical certifications until March 2012 (See paragraph 6 of the Declaration of Sharon Koehler attached hereto as Exhibit "15").  Again, Plaintiff has failed to establish any record evidence to support a violation of 3617.

Second, Plaintiff claims that the board's assessment of a fine against Plaintiff constitutes retaliation under the FHA, however, the fine was instituted, held in abeyance and waived. (See Exhibit "13" and paragraph 9 of the Declaration of Sharon Koehler attached hereto as Exhibit

---

[17] *Sporn v. Ocean Colony Condominium Association*,[17] 173 F.Supp.2d 244, 252 (U.S.D.C. N.J. 2001),
[18] *Id.* at 252.

"15").  What's more, the 11th Circuit has held that the assessment of a fine against a condominium unit owner does not rise to the level of coercion or intimidation required to find a violation of section 3617.[19]  In fact, other circuits have found that even the shunning of an individual is not sufficient to establish a Section 3617 claim.[20]

Nothing in the text of the FHA or the case law interpreting it indicated that Congress intended to federalize unfortunate skirmishes between neighbors, tinged with discriminatory overtones or occasional discriminatory comments.[21]  A review of decisions from the circuits around the country reveals the court's ability, in the majority of cases, to draw a line between acts with discriminatory overtones or occasional discriminatory comments and pervasive or severe actions that include cross-burning, fire-bombing and other similarly overt discriminatory acts designed to intimidate, coerce, or interfere with housing rights.

Additionally, Plaintiff's contention that the Defendants failed to act on her application is not supported by the undisputed facts or case law.  In fact, an alleged failure to act does not rise to the level of the egregious overt conduct that has been held sufficient to state a claim under section 3617.[22]

Furthermore, a plaintiff's subjective beliefs of intentional discrimination or retaliation are insufficient to show an intentional discriminatory animus.[23] Try as she may, but Plaintiff has no record evidence to support any actions by these Defendants that would rise to the level of severe and pervasive conduct that is necessary to even begin to consider a Section 3617 violation.[24]

---

[19] See, *Wood v. Briarwinds Condominium Association Board of Directors*, 369 Fed.Appx.1, at 2, (C.A. 11(Fla.).

[20] *Id. Sporn* at 252.

[21] *Walton v. Claybridge Homeowners Association, Inc*., 32004 WL 192106 at *7 (S.D. Ind. 2004).

[22] See *Lawrence v. Courtyards at Deerwood Assn., Inc.,* 318 F.Supp.2d 1133, 1144-1145 (11th Cir. 2004)

[23] *Gavin v. Spring Ridge Conservancy, Inc.*, 934 F.Supp. 685, 687 (D.Md. 1995).

[24] See e.g., *Sporn v. Ocean Colony Condo. Ass'n,* 173 F.Supp.2d 244, 252 (D.N.J.2001) (ruling in favor of defendants because "shunning" of handicapped neighbors is not enough to support a § 3617 claim*);*

Certainly, amending the bylaws (which already included rules and regulations barring dogs), levying a fine (which was held in abeyance and eventually waived) or accusing Plaintiff of a violation of the no dogs rule, even given the "generous construction" Plaintiff requests, does not amount to the coercion, intimidation, threatening or interfering conduct required to establish a Section 3617 violation.

As such, there is no record evidence and no disputed facts that support, in any way, a prima facie cause of action for violation of 42 U.S.C. 3617 against these defendants.  Thus, the Defendants are entitled to summary judgment as to Count III of the Second Amended Complaint.

### c.  Plaintiff Fails to Establish a Violation of American With Disabilities Act

Plaintiff's Count VI against these Defendants alleges a violation of the American with Disabilities Act ("ADA") solely based on the assertion that Cowpet Bay West is a place of public lodging.  However, the undisputed facts and case law from around the country make it clear, that even viewed in a light most favorable to Plaintiff, Defendants are not subject to the ADA and thus Count VI must fail.

Title II of the ADA prohibits discrimination in public services or public places based on an individual's disability.[25]  In order to establish a violation of Title II, a plaintiff must show that he is: (1) a qualified individual with a disability, (2) excluded from participation in or denied the benefits of some service, program, or activity by reason of his disability; and (3) the entity which

---

*United States v. Weisz*, 914 F.Supp. 1050, 1054 (S.D.N.Y.1996) (finding for defendants where conduct alleged was "nothing more than a series of skirmishes in an unfortunate war between neighbors."); *See Whisby-Myers v. Kiekenapp,* 293 F.Supp.2d 845, 852 (N.D.Ill.2003)(detonation of explosive device simulator combined with racial epithets stated Section 3617 claim); *Johnson v. Smith*, 810 F.Supp.235, 238-239 (N.D.ILL.1992)(allegations of cross-burning on plaintiff's lawn and breaking plaintiff's windows stated claim under Section 3617.)

[25] *See Soto v. City of Newark,* 72 F.Supp.2d 489, 492 (D.N.J.1999); *Cottrell v. Rowan Univ.,* 786 F.Supp.2d 851, 857 (D.N.J.2011) (Hillman, J.).

provides the service, program or activity is a public entity.[26] In the instant matter, the dispute can simply be resolved by the undisputed fact that Cowpet Bay West is not a place of public lodging or accommodation.  Section 12182 of the ADA specifically provides that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[27]

A "place of public accommodation" is defined in the Act as including an "inn, hotel, motel, or other place of lodging."[28] In *Mitchell v. Walters,* No.Civ.A.10–1061, 2010 WL 3614210 (D.N.J. Sept. 8, 2010), the plaintiff claimed that her apartment complex discriminated against her on the basis of disability when it failed to accommodate her arthritis and diabetes.[29]  The court, however, found that an apartment complex does not fall within the definition of a "place of public accommodation" under the ADA, as it is more permanent in nature than the lodging and other transient housing covered by the ADA.[30] In so finding, the court looked to Third Circuit dicta stating that the ADA's legislative history indicated that residential facilities, apartments, and condominium complexes were not meant to be included in the definition of "places of public accommodation" under the statute.[31]  Further case law from other circuits follows the understanding that condominiums are not subject to the ADA.[32]  Still, other federal courts

---

[26] *Soto,* 72 F.Supp.2d at 493.  *See also Hibbert v. Bellmawr Mut. Housing Corp.* 937 F.Supp.2d 565, 572 (D. NJ, March 28, 2013).

[27] 42 U.S.C. § 12182(a).

[28] 42 U.S.C. § 12181(7)(A).

[29] Id. at *2

[30] *Id.* at *4.

[31] See *Hibbert* at 572 and *See id.* (discussing *Regents of *573 Mercersburg Coll. v. Rep. Franklin Ins. Co.,* 458 F.3d 159, 165 n. 8 (3d Cir.2006); *Indep. Housing Servs. of San Fran. v. Fillmore Ctr. Assocs.,* 840 F.Supp. 1328, 1344 (N.D.Cal.1993)).

[32] *See Lancaster v. Phillips Investments, LLC,* 482 F.Supp.2d 1362 (2007) (apartment building was not a public accommodation subject to Title III of ADA in suit by wheelchair-bound plaintiff for injury on ramp); *Thompson v. Sand Cliffs Owners Ass'n, Inc.,* No. 3:96cv270-RV, 1998 WL 35177067, *3 (N.D.Fla. Mar.30, 1998) (condominiums which did not allow units to be rented out were not public

uniformly have held that residential apartment buildings and condominiums are not lodging within the "public accommodation of the ADA."[33]

Plaintiff attempts to assert ADA applicability by asserting that units at Cowpet are rented on a short-term basis, however, whether resident condominium units are rented out short or long term, they will not be viewed as a 'public accommodation'.[34]

As such, the undisputed facts, record evidence and case law precedent of this circuit and around the country, make it clear that the Defendants are not subject to the ADA as the Defendants are not a place of public lodging.  Defendants are entitled to summary judgment as to Count VI of the Second Amended Complaint.

### d.  Defendants Did Not Exceed Authority- Count- VII

Plaintiff attached as Exhibit "A" to her Amended Complaint, the December 20, 2007 By-laws of the Cowpet Bay West Condominium Association and previously asserted that the by-laws placed no restrictions on dogs on the Cowpet Bay West premises.  A detailed reading and

---

accommodation within the meaning of the ADA).

[33] *See also Phibbs v. American Property Management,* --- F.Supp.2d ----, 2008 WL 746977, *3 (D.Utah Mar.19, 2008) (residential apartment complex and its assigned parking were not places of public accommodation as contemplated by the ADA); *Mabson v. Assoc. of Apartment Owners of Maui,* No. 06-235-DEA-LEK, 2007 WL 2363349 (D.Hawai'i Aug.13, 2007) (residential condominiums, whether short-term or long-term rental units, were not "public accommodations" within ADA); *Indep. Housing Servs. of San Francisco v. Fillmore Ctr. Assocs.,* 840 F.Supp. 1328, 1344 (N.D.Cal.1993) (apartments and condominiums do not constitute public accommodations within the meaning of the ADA); *Reid v. Zackenbaum,* No. 05-CV-1569, 2005 WL 1993394, *4 (E.D.N.Y. Aug. 17, 2005) (same); *cf. Regents of the Mercerburg Coll. v. Republic Franklin Ins. Co.,* 458 F.3d 159, 165 n. 8 (3rd Cir.2006) (agreeing that residential apartments and condominiums do not constitute public accommodations within the meaning of the ADA, but distinguishing the dormitory housing at issue). See C*hamplin v. Sovereign Residential Services* 2008 WL 2646627 *4.

[34] See *Thompson v. Sand Cliffs Owners Ass'n, Inc.*, 1998 WL 35177067, 3 (N.D. Fla. 1998)(holding where fifteen of seventy owners decided to rent their condominium residents did not change the residential nature of the condominiums because each owner was still free to use his condominium at any time or free not to rent it out at all.)

discussion of Plaintiff's prior Exhibit "A" (Exhibit "1" to this Motion) is important in understanding why Count VI is subject to summary judgment in Plaintiff's failure.

Under the 2007 bylaws, the Board of Directors is empowered to do a number of things, including the "operation" of the common areas and facilities (Art. II, Sec. 2(a)) and the adoption, amendment and enforcement of rules and regulations (Art. III, Sec.2(e)) covering the details of the operation and use of the Property.  Under Art. V, Sec. 9, any violation of a rule or regulation adopted by the Board, or a breach of any by-law, gives the Board the right to enter an apartment unit, and act to summarily abate or remove the violation, without being deemed guilty of trespass, or to enjoin or abate the violation by legal proceedings.  Art. V, Section 16, provides that a list of current Rules and Regulations attached as Exhibit "I" are adopted and that the board may enforce them with monetary fines and other sanctions, or by taking legal action to enforce them.

The Rules and Regulations set forth in Exhibit "I" to the 2007 By-laws includes a provision that "Dogs and farm animals are prohibited, and owners will be fined as specified by the Board of Directors.  The Association may require removal of any animal when it becomes bothersome to others or is deemed by the Association to be unacceptable."  Accordingly, because the By-Laws expressly incorporate the rules and regulations in Exhibit "I", the prohibition on dogs was effectively already a requirement of the By-Laws in their 2007 form.  Plaintiff was fully aware of the rules prohibiting dogs as of at least 2010, when Plaintiff, as a board member of Cowpet, at the March 11, 2010 board meeting, introduced a petition initiated by Windward # 12 with supporting signatures of several owners to permit dogs (subject to certain caveats) on CBW property. (See Exhibit "2" March 11, 2010 Board Meeting Minutes)

The undisputed facts and unambiguous language of the 2007 by-laws and incorporated rules and regulations, make it abundantly clear that the Defendants had authority to adopt rules and regulations and that the rules and regulations of 2007 already included a prohibition of dogs on the premises.   As such, the Court should grant Defendants' Motion for Summary Judgment as to Count VII.

### e.   Defendants Amendment to the Bylaws in 2012 Are Valid-Count VIII

Plaintiff's VIII contends that the February 2012 amendments to the by-laws were improper for not obtaining 75% approval of the owners.  However, Article XI Section 1. of the 2007 By-laws attached hereto as Exhibit 1 and previously introduced into the record as Exhibit A to Plaintiff's Complaint, clearly indicates that the By-laws can be amended by an affirmative vote of 66 2/3% of the voting membership.  Plaintiff alleges and the Defendants do not dispute, that the February 2012 amendments were approved by roughly 69%.   Thus, per the actual requirements of the Bylaws for the amending of the Bylaws, Defendants in fact received a sufficient amount of affirmative votes to amend the bylaws.   As such, based on the record evidence and undisputed facts, Defendants are entitled to summary judgment as to Count VIII of the Second Amended Complaint.

### f.   Plaintiff Fails to Establish Negligent and/or Intentional Infliction of Emotional Distress

Plaintiff's Count XIII is a combination of two separate causes of action, negligent and/or intentional infliction of emotional distress, neither of which are supported by any record evidence and no such evidence can be submitted as a result of Plaintiff's death.   Viewing the record evidence and undisputed facts in a light most favorable to Plaintiff, does not establish a prima facie cases for negligent or intentional infliction of emotional distress.

Under Virgin Islands law, a claim of intentional infliction of emotional distress requires

"extreme and outrageous conduct intentionally or recklessly causes severe emotional distress ..."[35] The Restatement (Second) of Torts § 46(1) defines outrageous conduct as "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  The court in *Smith* indicated that the court's role when dealing with a claim of intentional infliction of emotional distress is limited to determining "whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so."[36] Furthermore, "Discrimination alone does not state a claim for intentional infliction of emotional distress."[37]   Plaintiff's claim for intentional infliction of emotional distress is clearly based on alleged Fair Housing discrimination.

Furthermore, Plaintiff alleges that the Defendants failure to provide her an accommodation, publishing on the blog that Plaintiff had violated the NO DOGS Rule and imposing fines, are all intentional acts designed to create severe emotional distress on the part of Plaintiff. (See Paragraph 193 of the Second Amended Complaint).   First, none of these allegations are supported by the undisputed facts or record evidence.   For instance, the undisputed facts make clear that Plaintiff received an accommodation from Defendants in March/April of 2012.   Second, there is no record evidence that these Defendants published anything on the blog.  Defendant, Lance Talkington published the October 28, 2011 email on the blog and at the time, Plaintiff was perceived to be violating the No Dogs rule.  Also, any resident on property could or would have noticed Plaintiff and her dog around the property.  Again, this was a perceived violation of the no dog policy due to Plaintiff's alleged non-obvious disability.

---

[35] *Smith v. Elias,* 2007 WL 4209701, at *4 (V.I.Super.Ct.2007).
[36] *Id* at *4.
[37] *Id.* see also; *Equal Employment Opportunity Comm'n v. Chestnut Hill Hosp.,* 874 F.Supp. 92, 96 (E.D.Pa.1995); *see also Nichols v. Acme Markets, Inc.,* 712 F.Supp. 488 (E.D.Pa.1989), *aff'd,* 902 F.2d 1561 (3d Cir.1990).

Additionally, the undisputed facts demonstrate that the fines were held in abeyance and later waived by these Defendants.  What's more, even if the record evidence and undisputed facts supported Plaintiff's allegations, which they clearly do not, these allegations are not extreme and outrageous to permit recovery.  Again, the conduct must be extreme and outrageous.  It is not enough that the defendant acted with tortious intent or even acted with malice.[38]  As such, Plaintiff's claim for intentional infliction of emotional distress fails and cannot survive her death and these Defendants are entitled to summary judgment.

Plaintiff has similarly failed to meet the required elements for a claim of negligent infliction of emotional distress.  This Court has required two elements to sustain a claim of negligent infliction of emotional distress.  First the negligent conduct must have placed the plaintiff in danger of his or her own safety.  Second, the plaintiff must have suffered some physical harm as a result of the emotional distress.[39]  As there are no allegations, record evidence or any discovery indicating physical harm, Plaintiff cannot establish either element of a prima face case for negligent infliction of emotional distress.  As such, Defendants are entitled to summary judgment as to Count XIII.

### g.  Plaintiff Fails to Establish and Invasion of Privacy: Public Disclosure of Private Facts - Counts IVX & XVII

The Restatement (Second) of Torts provides the following standard for establishing an invasion of privacy claim:

---

[38] *See;* The Restatement (Second) of Torts § 46(1).

[39] *Mingolla v. Minnesota Mining and Mfg. Co.,* 893 F.Supp. 499, 506 (D.Vi. 1995). *See also Lempert v. Singer*, 26 V.I. 326 (D.V.I. 1995)(there can be no liability for negligent infliction of emotional distress absent physical harm); *International Islamic Community of Masjid Baytulkhaliq Inc. v. DEA*, 981 F.Supp. 352, 369-370 (grating summary judgment in defendants favor as to intentional and negligent infliction of emotional distress); *Ramos v. St. Croix Alumina, L.L.C.,* 277 F.Supp.2d 600, 604 (D.V.I.2003) *overruled on other grounds by Miller v. V.I. Hous. Auth.,* CIV. 1998/0089, 2005 WL 1353395 (D.V.I. June 3, 2005). ([p]hysical harm is a required element of a claim for negligent infliction of emotional distress in the Virgin Islands.") *Anderson v. Government of Virgin Islands,* 180 F.R.D. 284, 286 (D.Vi. June 11, 1998); RESTATEMENT (SECOND) OF TORTS § 313.

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that <u>(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.</u>  (emphasis added)

Restatement (Second) of Torts § 652D.

Here, Plaintiff alleges that these Defendants wrongfully disclosed private information concerning Plaintiff by allegedly openly discussing Plaintiff's application including her medical condition at Board meetings. (Paragraph 203 of the Second Amended Complaint)  Second, Plaintiff alleges that these Defendants disclosed the content of a personal letter addressed to Plaintiff. (Paragraph 204 of the Second Amended Complaint)  Third, Plaintiff alleges the content of Plaintiff's application was shared with Association members who are not on the board. (Paragraph 203 of the Second Amended Complaint).  Lastly, Plaintiff these Defendants publicized information that showed Plaintiff in a false light but does explain or provide any record evidence how she was portrayed in a false light.  (See Paragraph 217 of the Second Amended Complaint)  The record evidence and Declaration of Sharon Koehler confirm that (1) these Defendants never discussed the contents of Plaintiff's paperwork until March, 2012, when they first received same for review and this was done in private, without Mr. Talkington other non-board members present; (2) Talkington never received information regarding the contents of the Plaintiff's "paperwork" and (3) the contents of Plaintiff's "paperwork" was never published on the blog.  Moreover, Plaintiff herself actually publicized that she had a disability and was afforded protection under the FHA. (See Paragraph 54, of the Second Amended Complaint). Thus, any "private facts" allegedly published on the internet was done by Plaintiff herself.

Furthermore, the letter addressed to Plaintiff was published by Defendant Talkington, not these Defendants and it dealt with a matter of great public importance, namely, Plaintiff's perceived violation of the no dog rule.  What's more, the original email sent by Mr. Harcourt

(Exhibit "7"), was sent to a small group of individuals (the board and Plaintiff and Ms. Kromenhoek). Under Comment (a) to section 652D of the Restatement (Second) of Torts, "[I]t is not an invasion of the right of privacy . . . to communicate a fact concerning a plaintiff's private life to a single person or even to a small group of persons."

Here, the record evidence and undisputed facts do not demonstrate ANY private information concerning Plaintiff that was publicized by these Defendants. Furthermore, there is no record evidence, nor can there be, that Plaintiff was shown in a false light. A review of Plaintiff's allegations against these Defendants, even if true and viewed in a light most favorable to Plaintiff, do not support a prima facie case of invasion of privacy and are not highly offense to a reasonable person.

In addition to failing to submit evidence to support part (a) of an invasion of privacy claim, Plaintiff also fails to establish part (b), namely, that the information alleged by Plaintiff is not of legitimate public concern. While Plaintiff alleges that her dog certification was not of legitimate public concern, this is not a plausible argument. The residents of Cowpet had raised many objections to the dogs on the property, including Plaintiff's dog, and demanded that the Board take action to enforce the rules and regulations of Cowpet. The residents of Cowpet could not be expected to ignore Plaintiff and her dog in a community with a no dog's policy. The Plaintiff's dog was no secret and the fact that the Board asked Plaintiff to submit paperwork to seek an exception to the no dogs rule, is not confidential and is necessary information for the public community at Cowpet. To that end, none of Plaintiff's private or confidential information was every published on the internet or disclosed to anyone besides the board members and that was accomplished only in March 2012.

At bottom, the undisputed material facts establish conclusively that Plaintiff cannot prove the essential elements of any variation of an invasion of privacy claim, thus, final summary judgment is just and proper in favor of the Defendants.   Defendants Motion for Summary Judgment as to Counts XVI & XVII of the Second Amended Complaint must be granted.

## IV.   CONCLUSION

After two years to complete discovery and conducting none and failing to show any evidence to establish the existence of the essential elements of Plaintiff's claims against these Defendants, the plain language of Rule 56(c) mandates the entry of summary judgment.[40] Furthermore, as a result of Plaintiff's death, she cannot sufficiently refute Defendants undisputed facts or prove any aspect of her case.   Put simply, there is no set of facts under which Plaintiff would be entitled to relief in this litigation or under which Plaintiff could bring a successful claim against these Defendants.   Accordingly, summary judgment in favor of these Defendants on all claims brought by Plaintiff is not only warranted but required.

WHEREFORE, the Defendants, Cowpet Bay West Condominium Association and The Board of Cowpet Bay West Condominium Association, respectfully requests that the Court grant this Motion for Final Summary Judgment, entitlement to Defendants prevailing party attorneys' fees and costs and for such other and further relief, both at law and in equity, to which the Defendants may be justly and legally entitled.

---

[40] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-323 (1986).

Dated:  May 1, 2014        Respectfully submitted,

**BIRCH, de JONGH & HINDELS, PLLC & BOYD RICHARDS PARKER & COLONNELLI**
*Counsel for Defendants: Cowpet Bay West Condominium Association, The Board of Cowpet Bay West Condominium Association, Max Harcourt, Robert Cockayne, and Vincent Verdiramo*
1330 Estate Taarnebjerg
St. Thomas, VI 00802
Tel.: 340-774-1100; Fax: 340-774-7300

By:         /s/ Richard P. Farrelly
**Richard Farrelly**
Bar No. 105
rfarrelly@bdhlawvi.com
**Joseph Riopelle**
jriopelle@boydlawgroup.com

     I hereby certify that on the above-indicated date, I electronically filed the foregoing document with the Clerk of the Court using ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified below, either via transmission of Notices of Electronic Filing generated by ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

**Karin A. Bentz, Esq.**
(Attorney for Plaintiff)
5332 Raadets Gade, Ste. 3
St. Thomas, VI 00802
Tel: 340-774-2669
kbentz@virginalaw.com

**John H. Benham, III, Esq.**
(Attorney for Talkington)
Post Office Box 11720
St. Thomas, VI 00801
Tel: 340-774-0673
benham@bclawvi.com

**Ryan C. Meade, Esq.**
(Attorney for Alfred Felice)
9300 S. Dadeland Blvd., 4th Floor
Miami, FL 33156
Tel: 305-670-1101
rmeade@qpwblaw.com

         /s/ Richard P. Farrelly

**Richard Farrelly**