IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN
****************

| | | |
|---|---|---|
| BARBARA WALTERS, | ) | CIVIL NO. 12-00024 |
| | ) | |
| Plaintiff, | ) | Action for: Housing |
| | ) | Discrimination; Discrimination |
| v. | ) | Based on Disability; Invasion of |
| | ) | Privacy; Negligent Infliction of |
| COWPET BAY WEST CONDOMINIUM | ) | Emotional Distress |
| ASSOCIATION; THE BOARD OF THE | ) | Infliction of Emotional Distress; |
| COWPET BAY WEST CONDOMINIUM | ) | Punitive Damages; and Injunctive |
| ASSOCIATION; MAX HARCOURT, | ) | and Declaratory Judgment |
| in his personal capacity; ALFRED FELICE; | ) | |
| LANCE TALKINGTON; ROBERT | ) | |
| COCKAYNE; VINCENT VERDIRAMO, | ) | JURY TRIAL DEMAND |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, Plaintiff **BARBARA WALTERS** by and through the undersigned counsel, the **LAW OFFICES OF KARIN A. BENTZ, P.C.** (Karin A. Bentz and Julita K. de León, Esq.), and pursuant to Rule 56.1 of the Local Rules of Civil Procedure hereby submits the following in opposition to Defendants' Cowpet Bay West and the Board's summary judgment motion. The facts and evidence supporting this response are contained in Plaintiff's Response to Defendants Cowpet Bay West Condominium Association and the Board of Cowpet Bay West Condominium Association's Statement of Undisputed Material Facts and Plaintiff's Counter-Statements of Facts.[1] As demonstrated below, Defendants' motion for summary judgment should be denied, because genuine issues of material fact exist as to Plaintiff's claims under the Fair Housing Act and the Americans with Disability Act. Moreover, genuine issues of material facts exist as to Plaintiff's Intentional Infliction of Emotional Distress and Invasion of Privacy: public disclosure of private facts claims.

**I.     INTRODUCTION**

---

[1] Plaintiff's Response and Counter Statement of Facts are sequentially numbered. She will cite to these facts uniformly as "CSOF¶_____."

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 2 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 2

In 2011, pursuant to a prescription from a doctor, Plaintiff obtained Happy, an emotional support dog. Plaintiff, who owns a condominium unit at Cowpet Bay West Condominium, was subjected to the Board's no dogs rule. As a result, in February of 2011, Plaintiff submitted a copy of Happy's certificate and her letter prescription to the Cowpet Bay West office as an application for a reasonable application pursuant to the Fair Housing Act.

At the time Plaintiff, submitted her application, there was widespread opposition to dogs on the premises by both members of the Association and the Board. While members of the Board and Association understood and accepted service dogs under the American with Disabilities Act. They had a difficult time accepting the approval of dogs for persons that were not visibly disabled. As a result, the application languished before the Board, as both members of the Board and Association formed an unholy alliance to deny Plaintiff a reasonable accommodation. What is more, members of the Association voted to adopt the no dogs rule into the by-laws and allowed for waivers only under the American with Disabilities Act. To date, the Association rules, on its face, violate the FHA as the rules do not provide for a reasonable accommodation for emotional support animals.

## II.     STATEMENT OF FACTS

Plaintiff, a former member of the Cowpet Bay West Condominium Board (hereinafter "Board'), owns a condominium unit at Cowpet Bay West. (CSOF ¶1.) Plaintiff, as an owner, is also a member of the Cowpet Bay West Condominium Association (hereinafter "Association") (Id). In 2011, the By-laws of the Association did not prohibit dogs on the premises. (Id.,¶2). However, the Board had a NO DOGS RULE. (Id. ¶4). In February of 2011, Plaintiff, pursuant to a prescription from her treating physician, obtained "Happy," an emotional support dog. (Id., ¶1.) Plaintiff subsequently submitted a copy of her prescription, a letter, and Happy's certification to the Association's office as an application for a reasonable accommodation to the Board's NO DOGS RULE. (Id., ¶5.)

The application was handed to Louanne Schechter, the office manager for the Association. (Id. ¶6). Schechter discussed Plaintiff's application with her immediate supervisor, Jon Cassady. (Id.). Cassady informed Marx Harcourt ("Harcourt"), the then President of the Board, of Plaintiff's application. (Id.¶7) Subsequently, Harcourt and his "representative" Bill Canefield came to the

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 3 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 3

office to review the application. (Id.¶8)

At the time Plaintiff submitted her application, members of the Association and some members of the Board vehemently opposed to having dogs on the premises. (Id. ¶9). As a result, the Board began discussing amending the Association's By-laws to exclude dogs from the premises. (Id. ¶¶10-13). Although Plaintiff's application was submitted under the Fair Housing Act, the Board's subsequent deliberations focused only on "service animal" under the American with Disabilities Act ("ADA". (Id. ¶13). For example, at the Board's October 11, 2011 meeting, the Board discussed changing the By-laws to allow a waiver "only for service animals as defined by the ADA. (Id. ¶15).

Members of the Association and some members of the Board were also vocal in their support for "service dogs" and their disdain for emotional support dogs. (Id. ¶17). Exemplifying some Board members' disdain for "emotional support dogs," Susan Anderson, a Board member, wrote an email complaining that she saw Judith Kromenhoek walking a dog and assumed that she was walking the dog for somebody else "because Judith Kromenhoek does not appear to be disabled." (Id. ¶19).

Even the Board's whose responsibility it was to review Plaintiff's application had a narrow view on emotional support dogs. (Id. ¶20). In response to Anderson's email, Harcourt wrote" the Board is considering amending the by-laws to allow exceptions for 'true' service animals 'that are documented." (Id.) Harcourt response came months after Plaintiff submitted her application for review. (Id.) Harcourt also suggested to Anderson that a fine should be levied against the "offenders" unless they submitted "appropriate ADA complaint paperwork." (Id. ¶21).

Moreover, Board member Vincent Verdiramo ("Verdiramo") was one of the Board members that were required to review Plaintiff's application and grant her a reasonable accommodation. However, Verdiramo an attorney for Vincent Verdiramo not admitted in the Virgin Islands, provided the Board with legal advice on emotional support animals. (Id. ¶29). Verdiramo incorrectly advised the Board, that "another area of contention is the Fair Housing Act where **individuals seek to have animals for this so called emotional support.** This is not a blanket law. Every case has to be handled on an individual basis with official adjudication. Therefore, if a person wants to claim the need to have an animal under the Fair housing Act they have to bring the association to court, have a judge and expert look at all the evidence and the a decision will made." (Id. ¶29). (Emphasis added). What is more, Verdiramo emailed the letter to ninety-nine (99)

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 4 of 19

**Barbara Walters  vs. Cowpet Bay West Condominium, et al.**　　　　　　　　　　Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**　　　　　　　　　　Page 4

members of the Association informing them that he had advised the Board. (Id.). Verdiramo also incorrectly informed the Association members that "THERE IS NO ONE ON THIS BOARD WITH THE NECESSARY BACKGROUND TO EVALUATE ANY APPLICATION FOR EXEMPTION." (Id). Verdiramo also urged members of the Association to "contact the Board and make your wishes known.  If you sit ideally by and allow this to happen then we have no one to blame but ourselves. Please take an active part in our endeavor to keep Cowpet Bay animal free." (Id.)  (Emphasis original)

Having witnessed the manner in which the Board was mishandling the application process, Plaintiff raised her concern to Harcourt about the Board keeping her private and confidential information confidential. (Id. ¶24). Some members of the Board also raised concern about the acrimonious atmosphere that surrounded Plaintiff's application and requested that  members tone down the vitrolic emails and blog postings.  (Id. ¶23).  As a result, some members suggested that the Board should close the meetings to discuss Plaintiff's application. (Id.).  In response, Board member, Doug Rebak blogged, " I do support the Board's need for closed sessions on 'confidential" matters–but the dog issue??? PLEASE!!!! The situation is most disturbing and  not at all the way it should be in an upscale Residential/Resort Community." (Id. ¶25).

Reflecting the Board's general disregard for Plaintiff and her application and, a general lack of consideration for Plaintiff's privacy and her plea for confidentiality, Harcourt emailed a letter to Plaintiff and copied Talkington. (Id. ¶26).  Harcourt writing as Board  President, falsely accused Plaintiff of violating the NO DOGS RULE 'because [she] has not applied for an exception to the no dog rule. (Id.). Talkington posted the entire letter on the blog and as, a result, Plaintiff began to incur the ever ceasing wrath of the members of the Association regarding Happy. (Id. ¶27).

Although the Board met several after Plaintiff submitted her application in February, it never once took action on Plaintiff's application. (Id. ¶30).  The Board however discussed Verdiramo's legal opinion and subsequently voted to amend the By-laws to include the NO DOGS ALLOWED rule, without an exception for emotional support animals under the FHA. (Id. ¶31).  Even though the Board had previously discussed levying a fine against Plaintiff for violating its no dogs rule, (Id. ¶20, ¶26), the Board voted then to levy a fine against Plaintiff after it received a letter from Attorney Karin A. Bentz, informing the Board that the FHA requires the Association to make a reasonable

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 5 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 5

accommodation for emotional support dogs. (Id. ¶32). Soon after, Plaintiff was informed via email that she was being fined $50.00 per day for violating the Board's NO DOGS ALLOWED rule. (Id. ¶33). Plaintiff also applied for a reasonable accommodation for a second time, when she infomred Harcourt through email that she had papers pending in the office for her dog.(Id. ¶34).

A year after Plaintiff applied for reasonable accommodation, on April 11, 2012, Plaintiff was finally granted a reasonable accommodation after the Board election resulted in a new board president and several new board members. (Id. ¶43).

## II. GENUINE ISSUE OF MATERIAL FACTS EXIST, PRECLUDING SUMMARY JUDGMENT

### A. Summary Judgment Standard

The party seeking summary judgment must show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The burden on the *non*-moving party is not a heavy one; that party is simply required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial. *Hanley v. Jones,* 21 V.I. 190, 1984 V.I. LEXIS 27 (1984). The burden on the moving party is to establish the basis for its motion. *Donovan v. Harrah's Md. Heights Corp.*, 29 F.3d 527, 529 (8th cir. 2002). The court must inquire whether, on the summary judgment record, "reasonable jurors could find facts that demonstrated, by a preponderance of the evidence that the non-moving party is entitled to a verdict." *In re Paoli R.R. Yard PCL Litig.*, 916 F.2d 829, 860 (3d Cir. 1990). In determining whether there are genuine issues of material fact, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000) (emphasis added).

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. When the unresolved issues in case are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

Defendants have failed to meet their burden to establish the absence of any genuine issue of

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 6 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**　　　　　　　　Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**　　　　　　　　Page 6

material fact, and therefore summary judgment must be denied.

### B. Defendants Violated the Fair Housing Act.

The United States Supreme Court has held that discrimination covered by the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford handicapped persons equal opportunity to use and enjoy a dwelling." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729-30, (1995). To prevail on a 42 U.S.C. § 3604(f)(3)(B) claim, a plaintiff must establish that (1) she is disabled within the meaning of the FHA; (2) she requested reasonable accommodation; (3) Defendants knew or should have known about the disability; (4) such accommodation was necessary to afford her an opportunity to use and enjoy the dwelling; and (5) Defendants refused to make the requested accommodation. ***Hawn v. Shoreline Towers Phase I Condominium Assn, Inc.***, 347 Fed. App'x 464, 467 (11th Cir. 2009).

Plaintiff submitted her reasonable accommodation application in February of 2011. (CSOF, ¶5.) Included in it was a letter from her doctor explaining that she suffered from anxiety disorder, that she had severe limitations on her ability to cope with day-to-day stress, and that he had prescribed an emotional support animal in order to alleviate the symptoms of her condition. (Id. ¶ 2). The application was submitted to Louanne Schechter, the Cowpet Bay West office manager. (Id. ¶6). Moreover, Plaintiff subsequently requested a reasonable accommodation in her email to Harcourt on October 27, 2011. (Id. ¶34).

Clearly, the Board was aware that Plaintiff requested a reasonable accommodation, as at least two Board members reviewed the application before March 2012. (Id. ¶8.) Further, Doug Rebak, a member of the Board publicly discussed the necessity to hold closed meetings to discuss Plaintiff's pending application in a November 12, 2011 blog post. (Id ¶25.) What is more, Harcourt, the then President of the Board, acknowledged that Plaintiff had "papers for service dogs pending in the office as early as October of 2011." (Id. ¶26.) And, on October 27, 2011, Plaintiff informed Harcourt that she had an application pending in the office for a reasonable accommodation. Lastly, Robert Cockayne, a Board member distributed copies of Plaintiff's dog's certification to fellow Board members and non-Board members. (Id. ¶35.)

In December of 2011, Vincent Verdiramo, a member of the Board and also a lawyer wrote

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 7 of 19

**Barbara Walters  vs. Cowpet Bay West Condominium, et al.**                                      Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**                                        Page 7

a legal opinion for the Board on emotional support animal and the FHA. (Id. ¶29.). Verdiramo, also informed the ninety nine members of the Association that he had advised the Board. (Id). One wonders why Verdiramo was advising the Board on the FHA, if the Board was unaware that Plaintiff had applied for reasonable accommodation under FHA. (Id.). Further, the Board received two legal opinions: one from Maria Hodge and a letter from Attorney Karin Bentz, both informing board members that emotional support animals are permitted under the FHA. These letters were received before March 2012. Thus, the Board's knowledge of Plaintiff's application was never at issue.

Further, Defendants' argument that it is impossible for Plaintiff to establish that the Defendants refused to make reasonable accommodations because the Board finally voted to grant her a waiver in March of 2012 is equally specious. Discrimination under the FHA includes delays in issuing waivers that are caused in part by discriminatory intent, even if the waivers are ultimately granted. ***Carmona-Rivera v. Puerto Rico***, 464 F.3d 14 (1st Cir. 2006).

Defendants argument that Plaintiff was never denied the accommodation she requested is equally unavailing. The types of discriminatory actions prohibited are wide-ranging. ***United States v. Bankert,*** 186 F. Supp. 2d 623, 628 (E.D. N.C. 2000). Section 3604 prohibits all forms of discrimination, sophisticated as well as simpleminded, and tactics of delay, hindrance, and special treatment must receive short shrift from the courts. ***Williams v. Matthews Co.***, 499 F.2d 819, 826(8th Cir. 1974); ***see also United States v. Hughes Memorial Home***, 396 F. Supp. 544, 549 (W.D. Va. 1975) (internal citations and quotations omitted) (The FHA's catch-all phraseology may not be easily discounted or de-emphasized. Indeed, it appears to be as broad as Congress could have made it.). "The imposition of more burdensome application procedures, and or delaying tactics. . . .constitutes a violation of" the FHA." ***United States v. Yuouritan Const. Co.***, 370 F. Supp. 643, 648 (N.D. Cal. 1973); ***see also United States v. City of Jackson***, 318 F. Supp. 2d 395, 417-18 (S.D. Miss. 2002) (finding that a delay, combined with defendants' statements evincing discriminatory intent, could violate the FHA); *Bankert*, 186 F. Supp. 2d at 628 (noting that delay tactics may be a violation of the FHA; Robet G. Shwemm, Hous. Discrim. Law & Ligig. (2008) 98 § 13.4 ("[D]elaying tactics and burdensome application procedures used to limit. . . access to housing  are clearly covered by the phrase. . .'otherwise make unavailable or deny.'"). Thus, the case law is clear that denial of an

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 8 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**　　　　　　　　　　Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**　　　　　　　　　　Page 8

accommodation can be both actual or constructive. *United States v. Haileah Housing Auth.*, 418 Fed. App'x 872, 878 (11th Cir. 2011). Here, it took Defendants more <u>than eight months</u> to grant Plaintiff a reasonable accommodation.

In voicing their plaint, that they should not be held responsible because they never expressly denied Plaintiff a reasonable accommodation, Defendants relied on *Dubois v. Association of Apartment Owners of 297 Kalakaua*, 453 F.3d. 1175 (9th Cir. 2006). Unlike in this case, the Association in *Dubois* granted a temporary exemption pending an inquiry into the accommodation request. *Dubois*, 453 F.3d at 1178. That exemption—a reasonable accommodation was in place for the perceived medical necessity—was in place when the administrative claim was instituted, and the Association "thus never refused to make the requested accommodation." *Id*. at 1179. That is a far cry from the instant case, in which Defendants never granted Plaintiff permission to keep Happy on the premises after she filed her application in July of 2011. In fact, when Plaintiff insisted on keeping Happy on the premises, she received violation notices and fines were levied against her. *Dubois*, is therefore, readily distinguishable.

Defendants' reliance on the U.S. Department of Housing and Urban Development's ("HUD") findings that Plaintiff did not make a request for an accommodation is equally specious. While it is true that "refusal requires a showing that a plaintiff requested an accommodation and the defendant denied it. *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 578 (2d Cir. 2003). If making a request would be clearly futile or "foredoomed," then the plaintiff is not required to make such a request. United States v. Village of Palatine, 37 F.3d 1230, 1234 (7th Cir. 1994).

Here, there is no doubt that any request that Plaintiff made was "foredoomed." Plaintiff watched as an "organized community" of both members of the Association and some of the Board members ravaged her friend and neighbor, Judith Kromenhoek after she submitted a request for reasonable accommodation. (Id. ¶34). Because Plaintiff made an identical request and she too was not speared the harassment and ugliness, it would have been futile for Plaintiff to have allowed Harcourt and other members of the Board further access to her personal and confidential documents. *See Palatine*, 37 F.3d at 1234 (finding that a plaintiff "need not resort to [the Board's procedures] if such resort is manifestly futile or it is clear that the result of such procedures is foredoomed.").

At the very least, the record creates a triable issue of fact that Plaintiff was denied a

Case: 3:12-cv-00024-RAM-RM Document #: 204 Filed: 05/21/14 Page 9 of 19
**Barbara Walters vs. Cowpet Bay West Condominium, et al.**            Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**            Page 9

reasonable accommodation. Therefore, the summary judgment motion should be denied.

**C. Defendants Violated Section 3617 of the FHA.**

The FHA provides that "it shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by Sections 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

To establish a prima facie case of retaliation under the FHA, Plaintiff must establish: (1) "that Plaintiff was engaged in activity protected by the Act; (2) that Defendants took adverse action against Plaintiff; and (3) that there is a casual connection between Plaintiff's protected activity and her injury." *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009).

A protected activity includes "opposition to any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §12203(a). Here, Plaintiff engaged in two protected activities and Defendants do not dispute that these were protected activities. Requesting a reasonable accommodation constitutes a protected activity. *See Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002). Filing an administrative complaint also constitutes a protected activity. *Miller v. Bd of Managers of Whispering Pines at Colonial Woods Condo, II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006). (A protected activity under the FHA "includes an action taken to protest or oppose statutorily prohibited discrimination.").

Plaintiff filed an application for a reasonable accommodation. Soon after, she filed her application, Plaintiff came under intense fire by both members of the Association and Board for "having an illegal pet" on the premises. (Id. ¶16-24). Further, Plaintiff's private and confidential documents were posted on the internet in an effort by members of the Board and the Association "to seek out the truth" about Plaintiff's disability and Happy's status as an emotional support animal. (Id.). After Plaintiff filed her Administrative complaint with HUD, she came under additional fire by both members of the Board and the Association. (Id.).

Defendants first reiterate their position that they were unaware of the disability status of

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 10 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**                        Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**                                    Page 10

Plaintiff until March 2012 to support their conclusion that without knowledge of this disability status, "there can be no violation form the predicate." However, courts have found that it is not necessary for a plaintiff to establish an underlying claim of discrimination to prevail on a retaliation claim. *See Halprin v. Prairie Single Family Homes of Dearborn Park Ass'n*, 388 F.3d 327, (7th Cir. 2004); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1304-05 and n.43 (11th Cir. 1998); Reyes v. Fairfield Properties, 661 F.Supp. 2d 249, 265, n.6 (E.D.N.Y. 2009); *see also United States v. Pospisil*, 127 F.Supp. 2d 1059, 1063 (W.D.Mo. 2000)(finding that section 3617 is not solely "limited to violations of sections 3603, 3604, 3605, or 3606).

Significantly, under HUD's regulations, section 3617 is an independent cause of action. *Halprin*, 388 F.3d at 330. ("The regulation cuts section 3617 loose from section 3604, contrary to the language of section 3617."). The regulation forbids among other things, "threatening, intimidating or interfering with persons in their enjoyment of a dwelling because of the race, color, religion, sex, handicap, familial status, or national origin of such persons, or of visitors or associates of such persons. 24 C.F.C. §100.400(c)(2). Additionally, the regulations also prohibit "[i]ntimidating or threatening any person because that person is engaging in activities designed to make other persons aware of, or encouraging such other persons to exercise, rights granted or protected by this part," as well as "[retaliating] against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. §100.400(c)(4)-(5).[2] "Because the regulations indicate that retaliation for making a complaint under the FHA is unlawful conduct in itself, and there is no requirement that the complainant prove underlying discrimination, the Court finds the City's position is incorrect. *Pospisil*, 127 F.Supp. at 1063. Thus, contrary to Defendants' assertion, Plaintiff does not have to prove discrimination.

Moreover, Defendants contend that "[n]othing in the text of the FHA or the case law interpreting it indicated that Congress intended to federalize unfortunate skirmishes between neighbors, tinged with discriminatory overtones or occasional discriminatory overtones." First, what happened to Plaintiff after she submitted her application was far more than a skirmish between

---

[2] Because the Third Circuit has not ruled on whether the HUD regulations establish a separate cause of action for Section 3617, Plaintiff urges the Court to apply Chevron deference and defer to the HUD regulations as a permissible construction of the statute.

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 11 of 19

**Barbara Walters  vs. Cowpet Bay West Condominium, et al.**                     Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**                              Page 11

neighbors, tinged with discriminatory overtones or occasional discriminatory overtones.  Plaintiff was vilified for exercising her rights under the FHA.  Second, Defendants concede that the conduct was motivated by discriminatory animus.  Third, section 3617 does not require a showing of force or violence for coercion, interference, intimidation, or threats to give rise to liability.  *Walker v. City of Lakewood*, 272 F.3d 1114, 1128 (9th Cir. 2001).  When Congress intended to require such a showing, such as in the FHA criminal provision, it did so.  *Id.*

In discussing the scope of §3617, the Seventh Circuit noted that a clear act of inciting violence such as cross-burning outside someone's home, is but one example of intimidation.  *Halprin*, 388 F.3d 327, 330 (7th Cir. 2004).  Further, the Court noted, "[t]here are other, less violent but still effective, methods by which a person can be driven from his home and thus 'interfered' with in his enjoyment of it." *Id.* Neighbors ganging up on a plaintiff backed by the homeowners' association to which the plaintiff belong was found to be a violation of Section 3617 because it was a far from a simple quarrel between two neighbors or the [unfortunate skirmishes] that Defendants referred to in their moving papers. *Id*.

Though the case law is not uniform, interference encompasses more than physical force or intimidation.  *See, e.g., Mich. Protection & Advocacy Serv.*, *Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) ("Section 3617 is not limited to those who used some sort of potent force or duress, but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a  discriminatory animus.").Where, as here, there is "a pattern of harassment, invidiously motivated," a claim for violation of the FHA has been adequately pled. *See King v. Metcalf 56 Homes Ass'n*, *Inc.*, 385 F. Supp. 2d 1137, 1144 (D. Kan. 2005) (holding on a summary judgment motion, that a neighbor's persistent complaints represented a "severe and pervasive pattern of harassing plaintiff that was designed to interfere with plaintiff's enjoyment of her dwelling").

Defendants also cite several cases in support of their positions.  For instance, Defendants cite to *Sporn v. Ocean Colony Condo Ass'n*, 173 F. Supp. 2d 244, 252 (D.N.J. 2001), for the position that "shunning" of handicapped neighbors is not enough to support a §3627 claim." *Sporn*, however, is inapposite to this case.  First, the *Sporn* plaintiffs argued that they were "shunned" by condominium officials and neighbors because they filed a charge with HUD alleging discrimination based on

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 12 of 19

**Barbara Walters  vs. Cowpet Bay West Condominium, et al.**                          Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**                                      Page 12

familial status.  Plaintiff did not allege shunning.  Second, plaintiffs claimed discrimination based on familial status. Plaintiff's discrimination claim is based on invisible disability.  Fourth, Plaintiff claims retaliation and constructive denial, while the plaintiffs claimed retaliation for filing a HUD complaint.  It is important to note however that the *Sporn* court  recognized that "violence or physical coercion is not a prerequisite to a claim under Section 3617."  *Sporn,* 173 F. Supp. 2d at 256.

By citing to *Sporn*  and others like it, Defendants are suggesting that this Court give a narrow interpretation to the language of §3617.  First, none of the cases cited  provided compelling authority for this proposition.  Second, there is little dispute that the courts, including the United States Supreme Court, have held that the FHA must be interpreted broadly to effectuate the Congressional goal of eliminating housing discrimination.  *See, e.g., Trafficante v.Metro. Life Ins. Co.*, 409 U.S. 205, 211-12 (1972); *see also United States v. Koch*, 352 F. Supp. 2d 970, 976 (D. Neb. 2004); *Holly v. Crank*, 386 F.3d 1248, 1256 (9th Cir. 2004), *rev'd on other grounds* 400 F.3d 667 (9th Cir. 2005) ("noting that the FHA must be given a 'generous construction' to carry out a policy that Congress considered to be of the highest priority").

As discussed in detail *supra* at Section I, Plaintiff has established a valid claim for violation of Section 3617.  Having satisfied the burden to establish interference, harassment, and intimidation on the part of members of the Board and Association,  Plaintiff has also satisfied  the standard to establish Defendants' culpability under section 3617.

**D.     Defendants violated the American With Disabilities Act.**

"Integration is fundamental to the purposes of the American with Disabilities Act ("ADA")." ***Blum v. Bacon***, 457 U.S. 132, 141 (1982).  Thus, the ADA and the regulations adopted by the United States Department of Justice clearly define unnecessary segregation as a form of illegal discrimination against the disabled.  ***Crandon v. United States***, 494 U.S. 152, 158 (1990).[3]

Specifically, Title III of the ADA, 42 U.S.C. §§ 12181-12189, legislates against various forms of disability discrimination by a private entity, that is "any entity other than a public entity," as defined in Section 12131(1) of this title.  ***See*** 42 U.S.C. §12181(6).  Further, §12181(6) provides

---

[3] ADA was enacted with broad language and directed the Department of Justice to promulgate regulations necessary to implement the Act. 42 U.S.C. §12134(a). The Department of Justice revised the regulations in 2010.

Case: 3:12-cv-00024-RAM-RM Document #: 204 Filed: 05/21/14 Page 13 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**     Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**     Page 13

in particular part, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns leases ( or leases to), or operates a place of public accommodation." 42 U.S.C. § 12181(6). The ADA was amended recently and as a result, the Department of Justices revised the regulations for Title III. *See* Revised Final Title III Rule: A Compilation of Regulatory Provisions and Guidance.

Defendants contend that Count VI of the Plaintiff's Amended Complaint should be dismissed as the ADA does not apply. "Cowpet Bay West Condominium is not a place of public accommodation and, thus, not subject to the ADA." Defendants, however, rely on cases that predated the 2010 amendment to the ADA, which substantially redefines a place of public accommodation. In order for Plaintiff to prevail on a claim under the ADA, Plaintiff must prove that (a) she has a disability within the meaning of the ADA; (b) she was discriminated against by Defendants on the basis of her disability; (c) Defendants own, lease, (or lease to), or operate a place of public accommodation. ***See Bowers v. National Collegiate Athletic Association***, 9 F. Supp. 2d, 460, 480 (N.Y. 1998).

Plaintiff's letter from her doctor established that she was disabled within the meaning of the ADA. Plaintiff alleged that she suffers from a disability and requested reasonable accommodation in order to have "full and equal enjoyment" of her condo. ***See Fortyune v. American Multi-Cinema, Inc.***, 364 F.3d 1075, 1085 (9th Cir. 2004). Defendants denied Plaintiff's application.

    **E.**    **Defendants Exceeded Their Authority.**

Article II, Section 2 of the By-laws specifically limits the Board's authority to those that deal with the administrative affairs fo the Condo except those prohibited by law, the declaration, or by the By-laws. (CSOF ¶2). Clearly, failing to provide a reasonable accommodation is an unauthorized act, as it is illegal discrimination under the FHA. Further, the Board's approval of draft By-laws that were in clear contravention of the FHA is discrimination under the FHA and an unauthorized act under the By-laws. Likewise, failing to provide a reasonable accommodation as to the rules and regulations of the Board in the form of an exception to the Board's rule is also an unlawful act in violation of the FHA and an unauthorized act under the By-laws.

The Virgin Islands Legislature, through the Virgin Islands Condominium Act, authorized the

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 14 of 19

**Barbara Walters  vs. Cowpet Bay West Condominium, et al.**　　　　　　　　　**Civil No. 25/2012**
**Opposition to Association's Motion for Summary Judgment**　　　　　　　　　　　**Page 14**

Association to adopt governing documents which would permit the Association to govern its activities.  While the Association adopted By-laws which are subject to the Declarations, both the Association and the Board have only those powers specifically granted by the governing documents.  Given the  fact that the Board never before issued fines against unit owners for having dogs on the premises until Plaintiff applied for a reasonable accommodation further demonstrates that the Board's conduct in assessing those fines was partisan and therefore ultra vires. ***See Papalexiou v. Tower West Condo. Ass'n***, 167 N.J. Super 516, 527 (Ch. Div. 1979).

### F.　　Defendants' Conduct Caused Plaintiff to Suffer Emotional Distress.

Plaintiffs alleging violations of their rights under the FHA may recover compensatory damages for emotional distress. *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 899 (2nd Cir. 1993).  It is not necessary for Plaintiff to provide evidence of treatment by a healthcare professional or use of medication to be entitled to damages for emotional distress. *See Parris v. Pappas*, 844 F.Supp.2d 271, 278 (D. Conn. 2012).[4]  In the context of  FHA violations, courts have "recognized the severe mental trauma associated with unlawful discrimination and have upheld large compensatory awards for the victims in such cases. *Broome v. Biondi*, 17 F.Supp.2d 211, 224 (S.D.N.Y. 1997).

Uunder Virgin Islands law, in order to prevail on a claim for Intentional Infliction of

---

[4]  This Court is guided by the following framework:
Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant and egregious. In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration. Garden variety emotional distress claims generally merit $30,000 to $125,000 awards.

Significant emotional distress claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses. Finally, egregious emotional distress claims generally involve either outrageous or shocking discriminatory conduct or a significant impact on the physical health of the plaintiff. In significant or egregious cases, where there is typically evidence of debilitating and permanent alterations in lifestyle, larger damage awards may be warranted. *See Thorsen v. County of Nassau,* 722 F.Supp.2d 277, 292 (E.D.N.Y.2010) (quoting *Olsen v. County of Nassau,* 615 F.Supp.2d 35, 46–47 (E.D.N.Y.2009) (internal citations and quotation marks omitted)).

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 15 of 19
**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 15

Emotional Distress a plaintiff must prove: (a) the defendant acted intentionally or recklessly; (b) the conduct was "extreme and outrageous; (c) defendants' actions were the proximate cause of plaintiff's emotional distress; and (d) plaintiff suffered emotional distress. ***Elias v. Merchants Market, Inc***., 2007 WL 4209701 (V.I. Super. Ct. Oct., 2007).

On these facts, Plaintiff may successfully establish the Defendants' liability for intentional infliction of emotional distress. The harassment went unabated for more than ten (10) months with daily blog entries.

### J. Plaintiff states a Claim for Negligent and Intentional Infliction of Emotional Distress

Defendants contend that Court XIII must also be dismissed because Plaintiff failed to assert facts sufficient to plead both a Negligent and/or Intentional Infliction of Emotional Distress claim. A claim for intentional infliction of emotional distress requires a plaintiff to allege facts showing that the defendants engaged in "extreme and outrageous" conduct to "intentionally or recklessly causes severe emotional distress to another. . . ." ***Eddy v. V.I. Water and Power Auth.***, 955 F.Supp. 468, 478 (D.V.I. 1997).

Defendants undertook a series of outrageous conduct in order to deny Plaintiff a waiver. Harcourt published or caused to be published a letter on the blog in which Harcourt falsely accused Plaintiff of violating the NO DOGS RULE. (CSOF ¶26). Plaintiff was placed under enormous pressure then to defend herself. (Id. ¶24). As a former Board President, Plaintiff was embarrassed for having been labeled publicly as a rule breaker. (Id.) Feeling desperate and besiege, Plaintiff wrote Harcourt in an attempt to work things out. (Id.). Plaintiff knew that Harcourt and other Board members had formed an unholy alliance with members of the Association that were wholly against allowing emotional support dogs.(Id.) The posting of Plaintiff's private and confidential information on the blog created even more humiliation as Plaintiff was forced to defend her disability and the authenticity of the supporting documents.

Crucially, the Board knew about Plaintiff's medical condition in that she was pre-disposed to emotional distress. Yet, the Board created additional emotional stress by stonewalling Plaintiff's request and taking other actions, including amending the By-laws to specifically exclude emotional support animals, that placed Plaintiff under immense emotional stress. Those reckless and outrageous conduct lasted for almost one year. Thus, similar to ***Bishop v. Okidata, Inc***., 864 F.

Case: 3:12-cv-00024-RAM-RM  Document #: 204  Filed: 05/21/14  Page 16 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 16

Supp. 416, 428 (D.N.J. 1994), where the Court found a pattern of outrageous conduct to support a claim for intentional infliction of emotional distress, the Defendants' conduct was outrageous.

The Board's and Association's unwillingness to step in when Plaintiff was being vilified on the blogs and in chain emails, and the apparent policy of turning a blind eye to the verbal abuse, bullying and discrimination that she suffered at the hands of members of the Association and the Board, created a situation beyond " all possible bounds of decency."[5]

### K. Defendants invaded Plaintiff's Privacy.

Generally, invasion of privacy is actionable where there is: (1)unreasonable intrusion upon the seclusion of another; (2)appropriation of another's name or likeness; (3)unreasonable publicity given to another's private life; or (4)publicity that places another in a false light before the public. Restatement (Second) of Torts §652A (1976). Plaintiff must establish "publicity" of private facts about her individually and specifically. *Bussue v. Paradise Motors, Inc.*, 1994 WL 223046 (D. V.I.) Here, the letter that was posted on the blog identified Plaintiff and discussed private facts about her individually and specifically. Moreover, the letter was published on the internet. *See Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1384 (Pa. Super. Ct. 1994) (concluding that communication to a group of 17 persons constituted publicity as a matter of law.) Happy's dog certification, which was submitted as part of Plaintiff's application was distributed and eventually was posted on the internet as well.

Plaintiff also states a claim for public intrusion of private facts. To state a cause of action under Virgin Islands law, Plaintiff must plead that there was an intentional intrusion on the seclusion of her private concerns which was highly offensive to a reasonable person. *See* Restatement (Second) of Torts § 652(B). Here, Defendants permitted members of the Association that were not members of the Board to review her medical records and other private documents that were submitted to the Board for consideration of a waiver to the Board's NO DOGS RULE. Further, although the Board was supposed to be the final arbiter, the Board permitted members of the Association that were non-Board members to participate fully and openly in the process. As a result, Harcourt copied Talkington on personal and private correspondence addressed to Plaintiff. Further, Board members freely discussed the content of Plaintiff's application with Talkington, despite the

---

[5]Plaintiff Walters committed suicide on April 24, 2014.

Case: 3:12-cv-00024-RAM-RM Document #: 204 Filed: 05/21/14 Page 17 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  Civil No. 25/2012
**Opposition to Association's Motion for Summary Judgment**  Page 17

fact that he was not supposed to be involved in the reasonable accommodation process. Thus, Defendants improperly used their authority to allow unauthorized members of the Association access to Plaintiff's sensitive medical records and private documents. ***See, e.g., Toomer v. Garrett***, 574 S.E. 2d 76, 90 (N.C. App. 2002) (where the Court held that plaintiff had stated a claim by alleging that defendants improperly used their authority to allow unauthorized persons access to his sensitive medical and financial information.).

The elements for a claim for public disclosure of private facts include: (a) publicity to a matter concerning the private life of another; (b) that would be highly offensive to a reasonable person; and (c) is not of legitimate concern to the public. Restatement (Second) of Torts, § 652(D). As noted earlier, Defendants' argument that the disclosure does not constitute "publicity" because it was divulged to a small group is not supported by either the facts of the case or case law. As previously indicated, disclosure to a small number of persons may qualify as publicity if the small group has a special relationship with the plaintiff. *Johnson v. K. Mart Corp*, 560 N.E.2d 900, 903 (Ill. App. 1990). Disclosure of personal and private medical records on the internet would be highly offensive to most reasonable people.

Harcourt's letter falsely accused Plaintiff of violating the NO DOGS RULE and also implied that Plaintiff had not requested a reasonable accommodation, although Plaintiff's application was pending before the Board. Because of this letter, members of the Association and even some members of the Board perceived Plaintiff as a rule bender. Publication of the letter also humiliated and embarrassed Plaintiff, as she was a member of the Board who was seeking re-election at the time the letter was published.

**WHEREFORE**, Plaintiff respectfully requests this Court to DENY Defendants' Motion for summary judgment.

Respectfully submitted,

**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: May 21, 2014   /s/ Karin A. Bentz
**KARIN A. BENTZ, ESQ.**
**JULITA K. de LEÓN, ESQ**.
5150 Dronningens Gade, Suite 8
St. Thomas, Virgin Islands 00802
Telephone: 340-774-2669
Telecopier: 340-774-2665

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 18 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**                    **Civil No. 25/2012**
**Opposition to Association's Motion for Summary Judgment**                              **Page 18**

E-mail: kbentz@virginalaw.com

Case: 3:12-cv-00024-RAM-RM   Document #: 204   Filed: 05/21/14   Page 19 of 19

**Barbara Walters vs. Cowpet Bay West Condominium, et al.**  **Civil No. 25/2012**
**Opposition to Association's Motion for Summary Judgment**  **Page 19**

## CERTIFICATE OF SERVICE

I hereby certify that I caused the filing and service of the foregoing with the Clerk of the District Court of the Virgin Islands using the CM/ECF system, which will provide electronic notice by email to the following.

Richard P. Farrelly, Esq.
Birch de Jongh & Hindels, PLLC
1330 Taarneberg
St. Thomas, VI 00802
E-mail: rfarrelly@bdhlawvi.com

John H. Benham, III, Esq.
Benham & Chan
P.O. Box 11720
St. Thomas, Virgin Islands 00801
Tel: 340-774-0673
Fax: 340-776-3630
email: benham@bclawvi.com

Joseph G. Riopelle, Esq.
Boyd Richards Parker & Colonnelli, P.L.
Rivergate Tower Suite 1150
400 N. Ashley Drive
Tampa, Fl. 33602
jriopelle@boydlawgroup.com

Ryan S. Meade, Esq.
Quintairos, Prieto, Wood & Boyce, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, Fl 33156
rmeade@gpwblaw.com

/s/ Karin A. Bentz