**IN THE UNITED STATES DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN**
******************

| | | |
|---|---|---|
| **BARBARA WALTERS,** | ) | **CIVIL NO. 12-00024** |
| | ) | |
| **Plaintiff,** | ) | **Action for: Housing** |
| | ) | **Discrimination; Discrimination** |
| **v.** | ) | **Based on Disability; Invasion of** |
| | ) | **Privacy; Negligent Infliction of** |
| **COWPET BAY WEST CONDOMINIUM** | ) | **Emotional Distress** |
| **ASSOCIATION; THE BOARD OF THE** | ) | **Infliction of Emotional Distress;** |
| **COWPET BAY WEST CONDOMINIUM** | ) | **Punitive Damages; and Injunctive** |
| **ASSOCIATION; MAX HARCOURT,** | ) | **and Declaratory Judgment** |
| **in his personal capacity; ALFRED FELICE;** | ) | |
| **LANCE TALKINGTON; ROBERT** | ) | |
| **COCKAYNE; VINCENT VERDIRAMO,** | ) | **JURY TRIAL DEMAND** |
| | ) | |
| **Defendants.** | ) | |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS COWPET BAY WEST
CONDOMINIUM ASSOCIATION AND THE BOARD OF COWPET BAY WEST
CONDOMINIUM ASSOCIATION'S STATEMENT OF UNDISPUTED
MATERIAL FACTS AND PLAINTIFF'S COUNTER-STATEMENTS OF FACTS**

**COMES NOW** the Plaintiff, **BARBARA WALTERS** ("Plaintiff") and by and through the undersigned counsel, the **LAW OFFICES OF KARIN A. BENTZ, P.C.** (Karin A. Bentz, Esq., and Julita K. de León, Esq.) And submits her brief response to Defendants Cowpet Bay West Condominium Association and the Board of Cowpet Bay West Condominium Association ("Defendants") statement of undisputed facts in support of their summary judgment motion, pursuant to Rule 56.1 of the Local Rules of Civil Procedure.

Rule 56. 1 permits a party opposing a summary judgment motion to submit, inter alia, a "concise statement of any additional facts that the respondent contends are material to the motion for summary judgment and as to which the respondent contends there exists a genuine issue to be tried." For ease of reference, Plaintiff has referenced the corresponding paragraphs of Defendants' statement of undisputed facts as ("SOF") where appropriate. Additionally, Plaintiff has also referenced Plaintiff's Counter Statement of Facts ("CSOF") where appropriate.

Barbara Walters vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                    Page 2

I.      Plaintiff's Response to Defendants' Undisputed Material Facts.

1.      Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

2.      Plaintiff objects to this "fact" because it implies that Plaintiff was agitating to get around the NO DOGS RULE, when all Plaintiff did was to introduce a petition as a Board member. (Def. Ex. 2). (see exhibit 2 of Doc. No. 202.)

3.      Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

4.      On October 20, 2011, Susan Anderson sent an email to Max Harcourt informing him that she saw Plaintiff walking a dog "and assumed that Judith Kromenhoek was walking the dog for somebody else 'because Judith Kromenhoek' does not appear to be disabled.'" (*See* Exhibit 11 of Doc No. 202).

5.      Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

6.      Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

7.      Plaintiff objects to this "fact" to the extent that it implies that the Board wrote a letter to Plaintiff requesting medical information and Plaintiff "failed to respond or write to the board to inform the Defendants that she also had medical verification on file in her file at the office." In February of 2011, Plaintiff handed a copy of a letter from her doctor and a copy of a dog certification to Louanne Schechter, the Cowpet Bay West manager as an application for a reasonable accommodation to the NO DOGS RULE. (*See* Exhibit 4 Affidavit of Louanne Schechter, Exh. C of the Second Amended Compl. of Doc. No. 202).

8.      Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

9.      Walters provided her medical certification for review in February of 2011. (*See* Exhibit 4 Affidavit of Louanne Schechter, Exh. C of the Second Amended Compl.).

10.     Plaintiff objects to this "fact." Plaintiff's letter to Harcourt expressing her concern about keeping her medical record confidential speaks for itself. (See Exhibit 24 of

Barbara Walters vs. Cowpet Bay West Condominium, et al.          Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                    Page 3

Doc. No. 202).

11.    Plaintiff objects to this "fact" as it implies that the Board did not have access to Plaintiff's application for a reasonable accommodation.  The application was filed with the Cowpet Bay west office manager and was on file in the office.(*See* Exhibit 4 Affidavit of Louanne Schechter, Exh. C of the Second Amended Compl. of Doc No. 202).

12.    Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

13.    Plaintiff objects to this "fact" as it implies that Plaintiff did not submit her"paperwork" In March of 2012.  Plaintiff submitted her documents in February of 2011. (See Exhibit 24 of Doc No. 202).

14.    Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

15.    Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

16.    Plaintiff objects to this "fact" as it implies that a finding by HUD that "there was no reasonable case" to believe that Defendants violated the Fair Housing Act should be construed as the Act was not violated.

17.    Plaintiff objects to this "fact" as it implies that the first discussion by the board or any board member regarding Plaintiff's application and/or the content of her application was in March of 2012.  As early as October of 27, 2011, Doug Rebak a prominent member of the Board, opposed closing the Board meeting to review Plaintiff's reasonable accommodation application. Board member Vincent Verdiramo's legal opinion to the Board and subsequently letter to the Association informing them that he had advised the Board about the FHA and the ADA. Plaintiff informed the Board President in an email dated October 27, 2011, that she had an application pending in the office. (See Exhibit 20 of Doc No. 202.).

18    During the January 11, 2012 Board meeting, Defendant Cockayne distributed a copy of Plaintiff's dog certification.  The certification was filed with the office as

1

2

3

4

part of Plaintiff's reasonable accommodation application. (See Exhibit 23 of Doc

No. 202).

5

6

7

8

9

18.     Plaintiff objects to this fact as it is simply not supported by the record.  The Board

had access to Plaintiff's application soon after Plaintiff filed her application in

July of 2011.  Both Harcourt and Bob Canefield came to review the file. (*See*

Exhibit 4 Affidavit of Louanne Schechter, Exh. C of the Second Amended Compl

of Doc No. 202.).

19.     Plaintiff agrees that this fact is undisputed for purposes of summary judgment.

10

11

12

**II.     Plaintiff's Counter Statement of Facts**

13

1.     Plaintiff Barbara Walters  owned and resided at a condo at Cowpet Bay West on the east

side of St. Thomas. (Second Amended Compl. §1).

14

15

16

17

18

19

20

21

22

23

24

2.     A licensed psychologist wrote a letter stating that he was treating Plaintiff and that she

was diagnosed with Anxiety Disorder, citing the DSM-IV.  He further explained that

Plaintiff had "severe limitations" in coping with stress and anxiety that most people

would consider "normal day to day events." He went on to state that he has prescribed the

use of an emotional support animal, dog or other, to alleviate her symptoms and that such

emotional support animal was necessary.  In conclusion, he states that pursuant to the

Fair Housing Act, Plaintiff  is qualified to keep her emotional support animal despite a

policy prohibiting pets in her housing.  On that same day, the National Service Animal

Registry issued a certification that Plaintiff  was allowed to keep her emotional support

animal even if there is a policy prohibiting pets.  (**Exhibit 1**. *of Doc No. 202*).

25

26

3.     In 2011, the By-laws of the Cowpet Bay West Condominium Association did not prohibit

dogs.  (**Exhibit 2 1998 and 2012 *Bylaws***; see Exhibit 2 of Doc No. 202).

27

28

4.     The Rules and Regulations of the Board prohibited dogs on the premises. (**Exhibit 3.**

***Rules and Regulations; see Exhibit 3 of Doc No. 202***)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                      Page 5

5.   In July of 2011, Plaintiff submitted a an application for a reasonable accommodation to keep Oliver, her emotional support dog on the premises.  Because Cowpet Bay West did not have a formal application process, Plaintiff submitted a copy of a letter from her doctor and a copy of Oliver's certification. (**Exhibit 4**. *Affidavit of Louanne Schechter; see exhibit 4 of Doc No. 202*).

6.   Louanne Schechter accepted the application, placed them in Plaintiff's file, and discussed Plaintiff's reasonable accommodation with her supervisor Jon Cassady. (*Id.*)

7.   Cassady informed Harcourt about the application. (*Id.*).

8.   Harcourt reviewed the application and sent his 'representative" Bill Canefield to review the application as well. (Id.).

9.   At the time Plaintiff submitted her application for a waiver, there was widespread opposition by both members of the Association and Board to having dogs on the premises.  (**Exhibit 5**: *blog entries from members of the assoc and board*; see exhibit 5 of Doc No. 202)

10.  At the February 12, 2011 Board meeting, Board member Robert Cockayne proposed amending the by-laws to prohibit dogs and farm animals.  There was no mention of providing reasonable accommodations to owners under the FHA or the ADA. (**Exhibit. 6:** *2/12/2011 minutes; see exhibit 6 of doc No. 202*).

11.  During the May 10, 2011 Board meeting, an owner complained of someone walking a dog on the property.  (**Exhibit 7**: *5/10/11 board minutes*; see Exhibit 7 of  Doc No. 202.)

12.  The Board, headed by Harcourt, voted to post "No Dogs Allowed" signs on the property. (*Id.*).

13.  During the Board meeting on September 13, 2011, the Board discussed Service Dogs and mentioned that the dogs must be registered with the ADA.  The Board also opined that the Virgin Islands does not have guidelines for "service dogs." (**Exhibit 8**: *9/13/11 board minutes; see Exhibit 8 of Doc No. 202)*.

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                        Page 6

14.   In his first blog post relating to "dogs" on the premises, Talkington, on September 27,

2011, stated that " at least three owners. . . have been seen with dogs that are either living

in condos or are being entertained by an owner walking them on the property."  He goes

on to point out that two of the dog owners are present and past Board members.

Talkington called for the members of the Association to amend the  Association's by-

laws to "eliminate any confusion over possible exceptions to the general rule" of no dogs.

(**Exhibit 8.** *9/27 blog post; see Exhibit 8 of Doc No. 202*).

15.   At the October 11, 2011 Board meeting, the Board, headed by Harcourt, took no action

on Plaintiff's application, although it had been pending for months.  However, the Board,

under Harcourt's leadership, discussed changing the by-laws to adopt a NO DOGS

ALLOWED rule and allowing a waiver "only for a service animal as defined by the

ADA." (**Exhibit 9**: *10/11/11 board minutes; see Exhibit 9 of Doc No. 202*.)

16.   Harcourt and at least two Board members knew that the applications were currently

pending before the Board and had been pending for more than two months when they

proposed  an exception only for the ADA (**Exhibit 4; see Exhibit 4 of Doc No. 202**).

17.   In a comment to Talkington blog post, in which he attacked Barbara Walters by not

sharing her medical information with members of the Association, Alfred Felice chimed

in on the blog and stated that "'service dogs' for the true needs are legal, but anyone can

get such a designation by simple request from a friendly physician, regardless of any real

need. Anyone can also get one via the internet for a minimal fee.!!!" (**Exhibit 10**: *10/13

11 blog post; see Exhibit 10 of Doc No. 202*).

18.   Exemplifying the type of discriminatory attitude that the FHA and the ADA were enacted

to combat, Felice went on to say that "the perpetrators might just as well spit in our face.

The by-laws must be made to reflect the majorities' rights.  Perhaps, the dissenters would

be happier in another community rather than be ostracized at CBW, which would be

another fine recourse."(Id.).

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                     Page 7

19.  Susan Anderson, a Board member, wrote an email complaining that she saw Kromenhoek
     walking a dog and assumed that she was walking the dog for somebody else "because
     Judith Kromenhoek does not appear to be disabled."  (**Exhibit 11: *email of Anderson;***
     ***see exhibit 11 of Doc No. 202)***.

20.  In response to Susan Anderson's email regarding Judith Kromenhoek's "presumed
     disability," in an email dated  October 20, 2011, Harcourt informed Susan Anderson that
     the Board was considering amending the by-laws to allow exceptions for "true" service
     animals "that are documented."  Harcourt response came months after Kromenhoek
     submitted an application for a reasonable accommodation to the Board, which was still
     pending. (**Exhibit 12: *Harcourt's email of 10/20/11***; see Exhibit 12 of Doc No. 202).

21.  Harcourt also stated that a fine should be levied against the "offenders" unless they
     submitted "appropriate ADA compliant paperwork." (Id.).

22.  On October 26, 2011, Talkington blogged calling for the Board to enforce its rules and
     regulations. (**Exhibit 13**: ***10/26/11 Talkington's blog entry; see exhibit 13 of Doc No.***
     ***202***).

23.  On October 27, 2011, a member of the Board emailed the entire Board suggesting that the
     Board should respond to both Anderson's and Talkington's inquiries. (**Exhibit 14**:
     ***10/27/11 email***; see Exhibit 14 of Doc. No. 202).

24.  Kromenhoek raised her concern to Harcourt about the Board keeping her private and
     personal information confidential. (**Exhibit 15**: ***email or blog from Judi***; see exhibit 15
     of Doc. No. 202).

25.  Several members of the Board violently opposed having closed Board meetings to discuss
     the applications.  In response to a blog recommending a closed meeting to discuss the
     requests for reasonable accommodation, Board member Douglas Rebak blogged, "I do
     support the Board's need for closed sessions on "confidential" matters–but the dog
     issue??? PLEASE!!! The situation is most disturbing and not at all the way it should be in

an upscale Residential/Resort Community!" (**Exhibit 16: *blog from Rebak*.**)

26.    Notwithstanding the objections to providing Talkington with private and personal

information, on October 28, 2011, Harcourt emailed a letter to Walters and  copied

Talkington.  Harcourt wrote as President of the Board and falsely accused Walters and of

violating the NO DOGS RULE "because they have not applied for an exception to the no

dog rule."  Harcourt also acknowledged in that same letter that both Kromenhoek and

Walters had "papers for service dogs pending in the office."  Contradicting himself,

Harcourt ordered Walters  to apply and submit documentation for a waiver and threatened

to levy a monetary fine if they did not take up his offer. (**Exhibit 17**: email from

Harcourt; see exhibit 17 of Doc. No. 202).

27.    Talkington posted the entire letter on the blog in his October 30, 2011 post. (**Exhibit 18**:

***10/30/11 blog post from Talkington***; see exhibit 18 of Doc. No. 202.).

28.    At the November 8, 2011 Board meeting, the Board took no action on the pending

applications.  However, the Board, led by Harcourt, discussed amending Section 11 of the

by-laws to add:

> No dogs are allowed on the property, either long term or visiting.  The
> Board may grant exceptions to the NO DOGS ALLOWED rule, on an
> individual basis, should an owner require the assistance of a service animal
> (dog) as defined by the ADA. Owners seeking to obtain such an exemption
> are required to apply, in writing, to the Board with supporting document.

(**Exhibit 19: *11/8/11 board minutes;* see exhibit 19 of Doc. No. 202*).**

29.    On December 2, 2011, Vincent Verdiramo, an attorney and member of the Board,

emailed a December 1, 2011 letter to 99 members of the Association informing them that

he had advised the Board.  In his letter, Verdiramo offers legal advice to the Association.

> He advised that "when a person claims the need for am\n an
> emotional support animal under the FHA, the person must bring
> the Association to court and have a judge and an expert look at all
> the evidence and the a decision will be made." present expert
> testimony.  Verdiramo continued " [a]nother area of contention is
> the Fair Housing Act where individuals seek to have animals for
> this so called emotional support.  This is not a blanket law.  Every
> case has to be handled on an individual basis with official judicial

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                              Page 9

adjudication.  Therefore, if a person wants to claim the need to have an animal under the Fair housing Act they have to bring the association to court, have a judge and expert look at all the evidence and then a decision will be made.  Therefore, the association should be prepared to hire the necessary lawyers and/or doctors to put forth the association's position. PRESENTLY THE POSITION OF THE ASSOCIATION IS NO DOGS ALLOWED.The majority of owners do not want animals.  It is just a few who wish to push the envelope and contest the legality of our laws.  That is their prerogative.  However, the same individuals should be made to understand that it will become necessary for them to adjudicate these matters in a court of law and their positions evaluated by competent third parties.  THERE IS NO ONE ON THIS BOARD WITH THE NECESSARY BACKGROUND TO EVALUATE APPLICATION FOR EXEMPTION.  The only way to verify the truth and voracity of the applications being made by individuals for service dogs is to subject the individual and their experts to cross examination under oath. . . . It is my understanding that other condominium associations have attempted to allow dogs and it turned out to be a nightmare. The only facility that presently allows  dogs is the Elysian.  I am therefore urging everyone to contact the Board and make your wishes known. If you sit ideally (sic) by and allow this to happen then we have no one to blame but ourselves.  Please take an active part in our endeavor to keep Cowpet Bay animal free.

(**Exhibit 20:** *12/2/11 email from Verdiramo;* see exhibit 20 of Doc. No. 202).

30.   The Board held at least three meetings in December of 2011, but took no action on the

Plaintiff's application  for a reasonable accommodation. (**Exhibit 21:** ***board minutes***; see

exhibit 21 of Doc. No. 202).

31.   In a December 13, 2011 Board meeting, the Board, led by Harcourt, voted to amend the

by-laws to include the  NO DOGS ALLOWED rule without an exception for emotional

support dogs under the FHA. The Board also discussed the December 1, 2011 legal

opinion from Verdiramo. (**Exhibit 22:** *12/13/11 board minutes;* see exhibit 22 of Doc.

No. 202.)

32.   After receiving a letter from Attorney Karin A. Bentz on behalf of Barbara Walters, and

informing the Board about Walters right to an emotional support animal under the FHA,

the Board, led by Verdiramo voted to levy fines against Plaintiff.  The motion included

the caveat that the fines be held in abeyance until the matter was adjudicated. (**Exhibit**

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                    Page 10

**23: *Board meeting of January 11, 2012;*** see exhibit 23 of Doc. No. 202).

33.   On January 12, 2012, Plaintiff, for a second time, applied for a reasonable accommodation to keep Oliver on the premises. (**Exhibit 24**: ***Kromenhoek's letter;*** see exhibit 24 of Doc. No. 202).

34.   On January 19, 2012, Plaintiff received an email, via the office manager, from the Board informing her that she is 'in violation of the NO DOG on property rule."  It further informed her that she was being fined $50.00 per day for the violation. (**Exhibit 25**: ***January 19, 2012 letter; see*** see exhibit 25 of Doc. No. 202).

35.   As punishment for having Oliver on the premises, members of the Association banded together with some members of the Board to destroy Plaintiff's candidacy for the Board. (**Exhibit 26**: ***Emails from Felice;*** see exhibit 26 of Doc. No. 202).

35.   Board members also shared the content of Plaintiff's application with members of the Association that were not on the Board. (**Exhibit 27: minutes of board meeting of 1/11/12;** see exhibit 27 of Doc. No. 202).

36.   In a January 15, 2012 blog entitled "Puppy Dog Diplomas," Talkington attacked the service dogs' certifications by stating they are "certified by an outfit called the National Service Animal Registry."  Talkington concludes his blog post by sharing his "considered opinion" that such "outfits serve no legitimate purpose and exist mainly to sidestep what the ADA works diligently to accomplish" and putting forth a call "to stop the doggy diploma silliness and adopt clear ground rules for dogs at Cowpet."  Talkington proclaims that the ADA is the sole source of legitimacy for such rules. (**Exhibit 28**: **1/15/2012 blog from Takington;** see exhibit 28 of Doc. No. 202).

37.   On January 16, 2012, Harcourt distributed his President's Forum to the owners.  In it, he says: "[t]he issue of dogs on the property has been the subject of many (unfortunately) blanket emails, (sic) There are some owners who are violating the current rule.  The Board had shown some restraint in this matter since we are trying to revise the by-laws to

Barbara Walters  vs. Cowpet Bay West Condominium, et al.          Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                              Page 11

allow for valid exceptions; however, one of these owners had their attorney send the

Board a letter saying the attorney was representing them in a complaint against us.  The

Board voted to retain an attorney to protect the Association's interest." (**Exhibit 29**:

***1/16/2012 President Forum;*** see exhibit 29 of Doc. No. 202).

38.    On January 17, 2012, ever dutiful to Talkington, Harcourt emailed Talkington informing

him that the Board had received a letter from one of the owners stating the owner had

filed a complaint. Therefore the Board was retaining counsel. (**Exhibit 30**: ***1/17/12 email***

***from Harcourt;*** see exhibit 30 of Doc. No. 202***).***

39.    On February 28, 2012, Edward Wardell, the incoming President of the Board, emailed the

owners informing them that the by-laws were amended by a vote of 69.2% of the Owners

and will become effective once "registered with the U.S. Virgin Islands Government.

In this version of the by-laws, Section 11 of Article V was amended to state:

> No dogs are allowed on the property, either long term or visiting.
> The Board may grant exceptions to the NO DOGS ALLOWED
> rule, on an individual basis, should an owner require the assistance
> of a service animal (dog) as defined by the ADA. Owners seeking
> to obtain such an exemption are required to apply, in writing, to the
> Board with supporting documentation.

(**Exhibit 31**: ***2/28/12 email from Wardell;*** see exhibit 31 of Doc. No. 202).

40.    However, the April 11, 2012 Board minutes reflect that  Maria Hodge had suggested not

recording the by-laws and obtaining approval to revised the "no dogs" rule as follows:

> No dogs are allowed on the property, either long term or visiting.
> Owners or occupants who have properly documented and verified
> disability as defined by Federal Law may make a request for
> reasonable accommodation and exception to the prohibition on
> dogs on the property. An owner or occupant seeking an
> accommodation can do so in writing to the Board.  The request
> shall include: (1) identification of the owner or occupant seeking
> the accommodation; (2) explanation of the relationship between
> the requested accommodation and the disability; and (3)
> verification of the disability and need for accommodation as set
> forth in this rule. To facilitate the Board's review of each request
> for an accommodation of a non-obvious handicap, the Board may
> require(1) the submission of documentation verifying that the
> person meets the Federal Fair Housing Act's definition of
> disability; and (2) documentation from a doctor or other medical

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                        Page 12

professional who is in a position to know about the individual's disability, and that the requested accommodation is related to the individual's disability.  All information submitted to the Board that is necessary for the evaluation of the reasonableness of an accommodation will be kept confidential.

(**Exhibit 31:** *4/11/12 board minutes*; see exhibit 31 of Doc. No. 202)

41.     Despite legal advise and two applications requesting reasonable accommodation under the FHA, the Board purposefully excluded the FHA from consideration. (Id.)

42.     In December of 2011, Plaintiff filed charges of discrimination under the FHA with the Department of Housing and Urban Development (HUD) against the Association and the Board for violation of the FHA. (**Exhibit 32:** *HUD Complaint;* see exhibit 32of Doc. No. 202)

43.     After the Board elected a new president and new Board members, Plaintiff was finally granted a waiver, more than a year  after she initially filed an application requesting a reasonable accommodation. (**See Exhibit 31;** see exhibit 31 of Doc. No. 202*).*

44.     Plaintiff suffered severe emotional distress. (See Exhibit 34; Depo: of Sheena Walker: 60:15-25; 62:12-25; 64: 8–25; 61:2-6).


                                        Respectfully submitted,
                                        **LAW OFFICES OF KARIN A. BENTZ, P.C.**
Dated: May 21, 2014                     /s/ Karin A. Bentz                                
                                        **KARIN A. BENTZ, ESQ.**
                                        **JULITA K. de LEÓN,  ESQ**.
                                        5332 Raadets Gade, Suite 3
                                        St. Thomas, Virgin Islands 00802
                                        Telephone: 340-774-2669
                                        Telecopier: 340-774-2665
                                        E-mail: kbentz@virginalaw.com

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                              Page 13

## CERTIFICATE OF SERVICE

I hereby certify that I caused the filing and service of the foregoing with the Clerk of the District Court of the Virgin Islands using the CM/ECF system, which will provide electronic notice by email to the following.

Richard P. Farrelly, Esq.
Birch de Jongh & Hindels, PLLC
1330 Taarneberg
St. Thomas, VI 00802
Email: rfarrelly@bdhlawvi.com

John  H. Benham, III, Esq.
Benham & Chan
P.O. Box 11720
St. Thomas, Virgin Islands 00801
Tel: 340-774-0673
Fax: 340-776-3630
Email: benham@bclawvi.com

Joseph G. Riopelle, Esq.
Boyd Richards Parker & Colonnelli, P.L.
Rivergate Tower Suite 1150
400 N. Ashley Drive
Tampa, Fl. 33602
jriopelle@boydlawgroup.com

Ryan S. Meade, Esq.
Quintairos, Prieto, Wood & Boyce, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, Fl 33156
Email: rmeade@gpwblaw.com

/s/ Karin A. Bentz

Barbara Walters  vs. Cowpet Bay West Condominium, et al.                    Civil No. 25/2012
Plaintiff's Counter-Statement of Facts                                                     Page 14