DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| BARBARA WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2012-24 |
| | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; THE BOARD OF THE | ) | |
| COWPET BAY WEST CONDOMINIUM | ) | |
| ASSOCIATION; MAX HARCOURT, in | ) | |
| his personal capacity; LANCE | ) | |
| TALKINGTON; ALFRED FELICE, | ) | |
| ROBERT COCKAYNE, and VINCENT | ) | |
| VERDIRAMO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ATTORNEYS:

**Karin A. Bentz, Esq.**
Law Office of Karin Bentz, P.C.
St. Thomas, VI
    *For Barbara Walters,*

**Joseph G. Riopelle, Esq.**
Boyd Richards Parker & Colonnelli
Tampa, FL
**Carl R. Williams, Esq.**
**Richard P. Farrelly, Esq.**
Birch, Dejongh & Hindels
St. Thomas, VI
    *For Cowpet Bay West Condominium Association, Max Harcourt,*
    *Robert Cockayne, and Vincent Verdiramo,*

**John H. Benham, III, Esq.**
Watts, Benham & Sprehn, P.C.
St. Thomas, VI
    *For Lance Talkington,*

**Ryan C. Meade, Esq.**
Quintairo, Prieto, Woo & Boyer, P.S.
Miami, FL
    *For Alfred Felice.*

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 2

**MEMORANDUM OPINION**

**GÓMEZ, J.**

Before the Court are four motions for summary judgment filed by: Vincent Verdiramo, Robert Cockayne, Lance Talkington, and the Cowpet Bay West Condominium Association (the "Association") and the Board of the Cowpet Bay West Condominium Association (the "Board") (collectively, the "Defendants").

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Barbara Walters ("Walters") owned a unit in the Cowpet Bay West Condominium complex ("Cowpet"), a condominium community located on St. Thomas, United States Virgin Islands.

The Cowpet Bay West Condominium Association ("the Association") was formed under the Condominium Act of the Virgin Islands (the "Condominium Act"), 28 V.I.C. §§ 901-927. (Bylaws at 1, Civil No. 2012-24, ECF No. 31-1.)[1] The Association is comprised of all of the unit owners in the Cowpet condominium community. Association members purchase their units subject to

_____

[1] According to the Condominium Act,

> The administration of every property shall be governed by bylaws a true copy of which shall be annexed to the declaration and made a part thereof. No modification of or amendment to the bylaws shall be valid unless set forth in an amendment to the declaration and such amendment is duly recorded.

28 V.I.C. § 917.

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 3

the Association's Declaration,[2] Bylaws, and its Rules and

Regulations.[3]

Association members elect a Board of Directors ("the

Board"). The Board is made up of seven Association members. The

Bylaws provide that the Board has

> the powers and duties necessary for the
> administration of the affairs of the Condominium
> and may do all such acts and things except as by
> law, by the Declaration, or by [its] By-Laws may
> not be delegated to the Board of Directors by
> the unit owners.

(Bylaws at 2, Civil No. 2012-24, ECF 31-1.)

The Bylaws provide for the amendment and enforcement of

Rules and Regulations by the Board. At all relevant times, the

Rules and Regulations for Association members provide the

following:

> Dogs and farm animals are prohibited. Owners
> will be fined as specified by the Board of

---

[2] "'Declaration' means the instrument by which the property is submitted to
the provisions of this chapter, as hereinafter provided, and such declaration
as from time to time may be lawfully amended." 28 V.I.C. § 901.

[3] The Condominium Act also provides that,

> Each apartment owner shall comply strictly with the bylaws and
> the administrative rules and regulations adopted pursuant
> thereto, as either of the same may be lawfully amended from time
> to time, and with the covenants, conditions and restrictions set
> forth in the declaration or in the deed to his apartment. Failure
> to comply with any of the same shall be ground for an action to
> recover sums due, for damages or injunctive relief or both
> maintainable by the manager or Board of Directors on behalf of
> the Association of Apartment Owners or, in a proper case, by an
> aggrieved apartment owner.

28 V.I.C. § 906.

> Directors. The Association may require removal
> of any animal when it becomes bothersome to
> others or is deemed by the Association to be
> unacceptable.

(Rules and Regulations, Civil No. 2012-24, ECF No. 31-2.)

On or about January 21, 2011, Stansford S. Sutherland ("Sutherland"), "a licensed psychologist wrote a letter stating that he was treating Walters and that she was diagnosed with Anxiety Disorder . . . ." (Second Am. Compl. ¶ 30) In his letter, the psychologist stated "that he has prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms and that such emotional support animal was necessary." (*Id.*)

Walters owned a dog named Happy. Walters submitted information about her dog's qualification as an emotional support animal to Louanne Schechter ("Schechter"), Cowpet's office manager, and included the letter from Sutherland.

Subsequently, discussions on Walters's pet ownership appeared on an Internet web log, the Cowpet Bay Blog ("the blog"). The blog was maintained by a member of the Association, Lance Talkington. (Second Am. Compl. at ¶ 44, Civil No. 2012-24.) Frequent commenters included Alfred Felice.

Walters alleged that, on or about October 28, 2011, Max Harcourt, then president of the Board, e-mailed a letter addressed to Walters's e-mail address as well as to Talkington's

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 5

e-mail address. The letter stated that Walters had violated the

"no dogs" policy contained in the Rules and Regulations. The

letter also requested that Walters submit applications for

reasonable accommodation.

On or about January 19, 2012, the Board met and voted to

assess a fine of $50 per day against owners, including Walters,

who were in violation of the "no dogs" policy. Such fines were

held in abeyance. Thereafter, in February, 2012, the Association

voted to add the "no dogs" policy to the Bylaws. The newly added

bylaw contained no explicit exception for service animals.

Walters did request an exemption from the policy following the

amendment.  Ultimately, Walters was granted an exemption from

the "no dogs" policy.  All of the fines assessed against Walters

were waived.

Walters initiated this action against Cowpet on

April 9, 2012. Her complaint has twice been amended. Walters's

complaint contains the following claims: Count One alleges a

violation of the Fair Housing Act ("FHA"), 42 U.S.C. §

3604(f)(3)(b) against the Association and the Board; Count Two

alleges a violation of the FHA, 42 U.S.C. § 3617 against

Harcourt; Count Three alleges a violation of the FHA, 42 U.S.C.

§ 3617 against the Association and the Board; Count Four alleges

a violation of the FHA, 42 U.S.C. § 3617 against Alfred Felice;

Count Five alleges a violation of the FHA, 42 U.S.C. § 3617
against Talkington; Count Six alleges a violation of Americans
with Disabilities Act ("ADA"), 42 U.S.C. § 12188 against the
Association and the Board; Count Seven alleges the Board
exceeded its authority; Count Eight alleges that the February
2012 Bylaws Amendment is void; Count Nine alleges negligence
against the Association and the Board; The next count, also
labeled as "Count Nine" in the complaint, alleges intentional
infliction of emotional distress against Felice; Count Ten
alleges civil conspiracy against all Defendants; Count Eleven
alleges *prima facie* tort against all Defendants; Count Twelve
alleges defamation and slander *per se* against the Association,
the Board, Felice, Harcourt, and Talkington; Count Thirteen
alleges Negligent Infliction of Emotional Distress and
Intentional Infliction of Emotional Distress against all
Defendants except Felice; Count Fourteen[4] alleges Invasion of
Privacy – Public Disclosure of Private Facts against the
Association and the Board; Count Fifteen[5] alleges Invasion of
Privacy – Public Disclosure of Private Facts against Harcourt
and Talkington; Count Sixteen alleges Invasion of Privacy –

---

[4] This count is actually labeled, "Count IVX." Though the Roman numerals for
this count do not, in fact, equate to "fourteen," it is clear that they were
intended to.
[5] Similarly, this count is actually labeled, "Count VX."

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 7

False Light against all Defendants except Verdiramo and

Cockayne; Count Seventeen alleges Invasion of Privacy against

the Board, the Association, Harcourt, and Talkington; and Count

Eighteen alleges Negligence *Per Se*/Legal Malpractice against

Vincent Verdiramo.

During the pendency of this litigation, defendants Harcourt

and Felice passed away. On or about April 22, 2014, Walters also

passed away.

The Board and the Association filed a motion for summary

judgment seeking judgment on Counts One, Three, Six, Seven,

Eight, Thirteen, Fourteen, and Seventeen of the second amended

complaint. Cockayne and Verdiramo filed motions for summary

judgment seeking judgment on Count Thirteen of the second

amended complaint. Talkington filed a motion for summary

judgment seeking judgment on Counts Five, Eleven, Thirteen,

Fifteen, Sixteen, and Seventeen of the second amended complaint.

Finally, a motion for summary judgment was filed by an attorney

claiming to represent Harcourt.

The Court held a hearing on the Defendants' motions for

summary judgment on Walters's complaint, as well as a parallel

complaint filed by Cowpet resident Judith Kromenhoek, on May 27,

2014. Following a lengthy hearing, at which evidence was

presented and argument heard, the Court granted the Association

and Board's motions for summary judgment, and Talkington's motion for summary judgment on Walters's federal claims. The federal claims as against Harcourt and Felice were dismissed. All local claims were thereafter dismissed. Following the hearing, the Court indicated to the parties that a memorandum opinion documenting its rationale would be forthcoming.

## II. <u>DISCUSSION</u>

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir. 1986).

The movant has the initial burden of showing there is no genuine issue of material fact, but once this burden is met it shifts to the non-moving party to establish specific facts showing there is a genuine issue for trial. *Gans v. Mundy*, 762 F.2d 338, 342 (3d Cir. 1985). The non-moving party "may not rest upon mere allegations, general denials, or . . . vague statements . . . ." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 9

return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id*. In making this determination, this Court draws all reasonable inferences in favor of the non-moving party. *See Bd. of Educ. v. Earls*, 536 U.S. 822, 850 (2002); *see also Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

### III. ANALYSIS

In considering whether the Defendants have met their burden of showing there is no genuine issue of material fact and that they are entitled to judgment as a matter of law, the Court may consider the pleadings, the discovery and disclosure materials on file, and any affidavits. *See* Fed. R. Civ. P. 56(c). In support of their motions, the defendants have submitted affidavits, emails and other documents provided in discovery, declarations, and the pleadings.

Before the Court considers the merits of the counts in the second amended complaint, the Court must determine if the federal claims have survived Walters's death.

Walters alleges violation by the Association and the Board of the Fair Housing Act, the Fair Housing Act Amendment, and the

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 10

Americans with Disabilities Act. Walters also alleges that Lance
Talkington ("Talkington"), Harcourt, and Felice violated the
Fair Housing Act, as amended by the Fair Housing Act Amendment.

The Fair Housing Act ("FHA"), passed by Congress as Title
VIII of the Civil Rights Act of 1968, prohibits housing
discrimination on the basis of, *inter alia*, race, gender, and
national origin. 42 U.S.C. § 3601, *et seq.* Under the Fair
Housing Act Amendment ("FHAA"), which Congress passed in 1988 to
extend the coverage of the FHA to include people with
disabilities, it is unlawful:

> To discriminate against any person in the terms,
> conditions, or privileges of sale or rental of a
> dwelling, or in the provision of services or
> facilities in connection with such dwelling, *because
> of a handicap* of-
>
> > (A)  that person; or
> >
> > (B)  a person residing in or intending to reside in
> > that dwelling after it is sold, rented, or made
> > available; or
> >
> > (C)  any person associated with that person.

42 U.S.C. § 3604(f)(2) (emphasis added).

Under the Fair Housing Act Amendment ("FHAA"), which
Congress passed in 1988 to extend the coverage of the FHA to
include people with disabilities, it is also unlawful:

> to coerce, intimidate, threaten, or interfere
> with any person in the exercise or enjoyment of,
> or on account of his having exercised or
> enjoyed, or on account of his having aided or
> encouraged any other person in the exercise or

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 11

> enjoyment of, any right granted or protected by
> section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617.

The FHA's enforcement provision, allowing private individuals to bring suit based on violations of the FHA, is found in the United States Code in Title 42, Section 3613 ("Section 3613"). Section 3613 in pertinent part provides that, "[a]n aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . ." 42 U.S.C. § 3613. No provision of Section 3613 addresses whether an FHA claim may survive the aggrieved person's death. *See id.*

> Under Title III of the ADA, it is unlawful for a
> public accommodation to discriminate against an
> individual on the basis of disability in the full and
> equal enjoyment of the goods, services, facilities,
> privileges, advantages, or accommodations. 42 U.S.C.
> 12182(a). "Public accommodation" is defined in terms
> of 12 categories, which the legislative history
> indicates "should be construed liberally" to afford
> people with disabilities "equal access" to the wide
> variety of establishments available to the
> nondisabled. S. Rep. No. 101-116, p. 59 (1989); H.R.
> Rep. No. 101-485, pt. 2, p. 100 (1990), U.S.Code Cong.
> & Admin. News 1990, pt. 2, at pp. 303, 382-283. The
> ADA obligates a "public accommodation" only with
> respect to a "facility" that is "used as, or designed
> or constructed for use as," either a place of public
> accommodation or a commercial facility. 28 C.F.R. §
> 36.102(b)(3)(i)-(ii).

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 12

*Regents of Mercersburg College v. Republic Franklin Ins. Co.*,
458 F.3d 159, 164 (3d Cir. 2006). Like the FHA, the enforcement
provisions of the ADA do not provide whether or not such actions
survive an aggrieved party's death. *See* 42 U.S.C. § 12117
(incorporating the enforcement provisions found at 42 U.S.C. §
2000e-5).

Where another civil rights statute failed to provide
guidance on the survivability of actions, the Third Circuit has
instructed "the federal courts [to] seek guidance from state
survival acts provided they are not inconsistent with the
policies underlying the federal statutes." *Scott v. Univ. of
Delaware*, 601 F.2d 76, 81 n.8 (3d Cir. 1979) *abrogated on other
grounds by EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d
Cir. 1993).

This comports with the "gap-filler" provision of Title 42,
Section 1988 ("Section 1988"), which instructs that

> The jurisdiction in civil and criminal matters
> conferred on the district courts by the . . .
> Revised Statutes for the protection of all
> persons in the United States in their civil
> rights, and for their vindication, shall be
> exercised and enforced in conformity with the
> laws of the United States, so far as such laws
> are suitable to carry the same into effect; but
> in all cases where they are not adapted to the
> object, or are deficient in the provisions
> necessary to furnish suitable remedies and
> punish offenses against law, the common law, as
> modified and changed by the constitution and
> statutes of the State wherein the court having

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 13

> jurisdiction of such civil or criminal cause is
> held, so far as the same is not inconsistent
> with the Constitution and laws of the United
> States, shall be extended to and govern the said
> courts in the trial and disposition of the cause
> . . . .

42 U.S.C. § 1988.

Indeed, the Supreme Court of the United States has

counseled that though federal civil rights statutes failed, in

most instances, to instruct on the survivability of actions

> [s]tate statutes governing the survival of state
> actions do exist, however. These statutes, which
> vary widely with regard to both the types of
> claims that survive and the parties as to whom
> survivorship is allowed, *see* W. Prosser, Law of
> Torts 900-901 (4th ed. 1971), were intended to
> modify the simple, if harsh, 19th-century
> common-law rule: "[A]n injured party's personal
> claim was [always] extinguished . . . upon the
> death of either the injured party himself or the
> alleged wrongdoer." *Moor v. County of Alameda,*
> *supra,* at 702 n. 14, 93 S. Ct. at 1792; *see*
> *Michigan Central R. Co. v. Vreeland*, 227 U.S.
> 59, 67, 33 S.Ct. 192, 194, 57 L.Ed.2d 417
> (1913). Under § 1988, this state statutory law,
> modifying the common law, provides the principal
> reference point in determining survival of civil
> rights actions . . . .

*Robertson v. Wegmann*, 436 U.S. 584, 589-90 (1978). In accord

with that guidance, the Court will first review the Virgin

Islands statutory law that addresses the survival of actions.

The Virgin Islands Code contains a general survival statute

and a survival statute for actions sounding in personal injury

or tort.  The general survival statute is found at Section 601

in Title 15 of the Virgin Islands Code ("Section 601"). Section

601 provides in pertinent part that,

> [s]ubject to the provisions of sections 76 and
> 77 of Title 5, causes of action by one person
> against another, whether arising on contract or
> otherwise, survive to the personal
> representatives of the former and against the
> personal representatives of the latter.

V.I. CODE ANN. tit. 15, § 601. This statute has been interpreted

as codifying the general common law principle that claims

sounding in contract or equity survive a party's death. *See,*

*e.g., Hall v. Hall*, No. CV 2011-54, 2013 WL 4128465, at *6

(D.V.I. Aug. 9, 2013)("Section[] 601 [] fall[s] squarely in line

with the Restatement's explanation of the types of claims that

survive a party's death at common law.")

     The Virgin Islands survival statute for tort or personal

injury actions is found in Title 5 of the Virgin Code at

Sections 76 and 77 ("Section 76" and "Section 77",

respectively). Section 77, provides in pertinent part that,

> [a] thing in action arising out of a wrong which
> results in physical injury to the person or out
> of a statute imposing liability for such injury
> shall not abate by reason of the death of the
> wrongdoer or any other person liable for damages
> for such injury, nor by reason of the death of
> the person injured or of any other person who
> owns any such thing in action.

V.I. CODE ANN. tit. 5, § 77. Section 76 allows for the survival of

wrongful death actions. These statutes altered the more rigid

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 15

common law rule that claims for personal injury did not survive the injured party's death. *See Hall*, 2013 WL 4128465, at *6 ("[T]his Court has explained that the common law rule that death terminated all causes of action for personal tort has been statutorily altered in the Virgin Islands")(internal quotation omitted).

Given the survival provisions of the Virgin Islands Code, the Court is thus faced with determining whether a civil rights action would fall within the more permissive general survival statute -- Section 601 -- codifying common law norms of survivability, or within the more restrictive tort survival statute -- Sections 76 and 77. The Virgin Islands courts have not, to the Court's knowledge, ever opined on the application of the survival statutes to civil rights actions.  As such, the Court must look elsewhere for guidance on the issue of whether a civil rights claim under the FHA or ADA can be characterized as something akin to a tort claim, or as some other type of claim.

Federal appellate courts applying state survival law to civil rights actions have treated, generally without explanation, civil rights actions in the same manner as torts. *See, e.g.*, *Robertson*, 436 U.S. at 594 (applying Louisiana tort survival statutes to a civil rights action); *Bentz v. City of Kendallville*, 577 F.3d 776, 779 (7th Cir. 2009)(characterizing a

civil rights claim as one sounding in tort, and applying Indiana survival statutes); *Parkerson v. Carrouth*, 782 F.2d 1449, 1451 (8th Cir. 1986)(applying Arkansas tort law to a civil rights claim); *Barrett v. United States*, 689 F.2d 324, 331 (2d Cir. 1982)(applying New York tort survival statute to a civil rights action).

The widespread application of tort law to federal civil rights may be founded on the differences between tort law and other forms of common law.  A tort action "lie[s] from the breach of duties imposed as a matter of social policy[.]" *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001)(differentiating between tort and contract actions for purposes of determing the gist of a civil action). By contrast, in a contract action, the action lies "for the breach of duties imposed by mutual consensus." *Id.* Like tort law, civil rights laws have enshrined a set of duties owed by individuals to the public because as a nation we have determined it is sound policy to impose such duties. Those parties on which this duty is imposed – public places, landlords, public accomodations, transportation companies, etc. – did not mutually consent to the imposition of the duty.  Instead, society has set the standard that the regulated entities must meet.  Thus, the imposition of a duty in the civil rights context is based on the

same principles that undergird imposition of a duty in tort law. That trait is not shared with claims that arise under contract law or equity.

It may also be that tort law has been used in civil rights cases due to tort law's focus on "personal injuries."  It is axiomatic that tort law is premised on the suffering by the claimant of a personal injury.  Personal injuries are defined as "any harm caused to a person, such as a broken bone, a cut, or a bruise; . . . . Any invasion of a personal right . . . ." Injury, *Black's Law Dictionary* (9th ed. 2009). Civil rights actions are premised on the suffering caused by the denial or invasion of a person's individual rights. This is something rather different from "loss," which is the foundation of actions sounding in contract or equity.

After due consideration of the issues raised herein, the Court is persuaded that tort law is the area of law most analogous to civil rights law in these circumstances.  Like actions sounding in tort, the duties breached in this case were those set by social policy and the injuries occasioned were personal injuries.  As such, the Court holds that the Virgin Islands survival statute for actions sounding in tort, Section 77, "provides the principal reference point in determining

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 18

survival of [the] civil rights actions," *Robertson*, 436 U.S. at 589-90, asserted in Walters's complaint.

The tort survival statute in the Virgin Islands states in pertinent part that "[a] thing in action arising out of a wrong which results in *physical injury* to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action." V.I. CODE ANN. tit. 5, § 77 (emphasis added).

No physical injury is alleged here. Walters confines her complaint to alleging "emotional distress, embarrassment, and humiliation." Indeed, based on the record evidence, no physical injury can be proven.  As such, this action would fall outside of the survivability statute codified at Section 77. *See id*. Considering the Virgin Islands' law of survivability, as applied to the federal civil rights claims in the complaint, the Court finds that none of the federal claims in this matter have survived Walters's death.

Counts Seven through Eighteen each allege claims arising under local laws (the "local claims"). Those claims are subject to different jurisdictional considerations, which may affect their viability in this Court.  In order to assess

jurisdictional viability of the local claims, a brief overview
of the subject-matter jurisdiction of this Court is in order.

Federal district courts are courts of limited jurisdiction.
Ordinarily, a district court has original jurisdiction over
"civil actions arising under the Constitution, laws, or treaties
of the United States." 28 U.S.C. § 1331 ("federal question
jurisdiction"). District courts also have original jurisdiction
over civil actions between citizens of different states with the
amount in controversy exceeding the sum or value of $75,000. 28
U.S.C. § 1332 ("diversity jurisdiction"). The Supreme Court has
"interpreted the diversity statute to require 'complete
diversity' of citizenship." *C.T. Carden v. Arkoma Assoc.*, 494
U.S. 185, 187 (1990). That means "every plaintiff must be of
diverse state citizenship from every defendant." *In re Briscoe*,
448 F.3d 201, 215.

Where a case is properly brought in the district court
pursuant to the Court's federal question jurisdiction or
diversity jurisdiction, the Court may have jurisdiction over
local claims that arise out of the same case or controversy as
those underlying the federal claims (supplemental jurisdiction).
28 U.S.C. § 1367.

The complaint in this matter names a plaintiff that is a
citizen of the Virgin Islands, Walters, and a defendant that is

a citizen of the Virgin Islands, Cowpet Bay West. As such, the
case could not be brought in this Court pursuant to the Court's
diversity jurisdiction under 28 U.S.C. § 1332. Instead, Walters
brought her complaint in this Court pursuant to its federal
question jurisdiction under 28 U.S.C. § 1331, as the FHA and ADA
claims arise under the laws of the United States. Those claims,
as discussed above, have been disposed of.

The local claims may be heard only if the Court exercises
its supplemental jurisdiction over those claims. That exercise
is not a foregone conclusion.

Indeed, "district courts may decline to exercise
supplemental jurisdiction over a claim . . . if--(1) the claim
raises a novel or complex issue of State law,(2) the claim
substantially predominates over the claim or claims over which
the district court has original jurisdiction,(3) the district
court has dismissed all claims over which it has original
jurisdiction, or (4) in exceptional circumstances, there are
other compelling reasons for declining jurisdiction." 28 U.S.C.
§ 1367.

With the disposition of the federal claims in this case,
the Court's exercise of jurisdiction over the local claims is
discretionary. Exercising that discretion, the Court will
decline jurisdiction over the remaining local claims. *See, e.g.*,

*Walters v. Cowpet Bay West Condominium Association, et al.*
Civil No. 2012-24
Memorandum Opinion
Page 21

B*orough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of juridical economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them[.]")

## V. <u>CONCLUSION</u>

For the reasons discussed herein, the Board, the Association, and Talkington are entitled to judgment as a matter of law on Counts One, Three, Five, and Six. The Court dismisses the federal claims against Harcourt and Felice as they do not survive Walters's death.  Finally, the Court will decline to exercise its supplemental jurisdiction over the local counts, Seven through Eighteen, as no federal counts remain.

An appropriate Judgment follows.

S_____
    **Curtis V. Gómez
    District Judge**