IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN

****************

| | |
|---|---|
| **LIANA REVOCK, Executrix of the Estate of BARBARA WALTERS,** | CIVIL NO. 12-00024 |
| Plaintiff, | Action for: Housing Discrimination; Negligent |
| v. | |
| **COWPET BAY WEST CONDOMINIUM ASSOCIATION; THE BOARD OF THE COWPET BAY WEST CONDOMINIUM ASSOCIATION; MAX HARCOURT in his personal capacity; ALFRED FELICE; LANCE TALKINGTON; ROBERT COCKAYNE; VINCENT VERDIRAMO,** | Infliction of Emotional Distress; Intentional Infliction of Emotional Distress; Punitive Damages; and Declaratory Judgment |
| | JURY TRIAL DEMAND |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT AGAINST DEFENDANT ALFRED FELICE**

**COME NOW** Plaintiff, **LIANA REVOCK, Executrix of the Estate of BARBARA WALTERS** ("Walters"), by and through her undersigned counsel, **LAW OFFICES OF KARIN A. BENTZ, P.C.**, (Karin A. Bentz, Esq.), and hereby respectfully submits this Memorandum of Law in support of her Motion for Summary Judgment against Defendant Alfred Felice ("Defendant" or "Felice")[1].

**PRELIMINARY STATEMENT**

In February 2011, Walters submitted a request to the Cowpet Bay West Condominium Association ("Cowpet" or "the Association") to be allowed to keep an emotional support animal (her dog "Happy") at her Cowpet Bay West condominium in accordance with the Fair Housing

---

[1] . A Petition for Temporary Administration in Estate of Alfred Felice, in the Surrogates Court for the State of New York, County of Nassau was filed by Plaintiff. Plaintiff received the case number today. Plaintiff has simultaneously filed a Motion to Substitute the Estate for the deceased at Docket Number 301. Plaintiff has been advised that the Administrator of that Estate can administer the settlements and or judgments for both Plaintiffs, Walters and Kromenhoek.

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 2 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*   Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice   Page 2

Act and Fair Housing Amendments Act (jointly "FHA"). SUF ¶8. The request included a diagnosis of an anxiety disorder requiring an emotional support animal from a licensed medical professional. SUF ¶9. The Board of the Cowpet Bay West Condominium Association ("the Board") discussed the request amongst themselves but did not reply to Walters. SUF ¶15. In the subsequent board meetings, the Board discussed amending the by-laws to prohibit dogs and farm animals and posting "No Dogs Allowed" signs around the property. SUF ¶¶26, 28. During the board meeting on September 13, 2011, the Board discussed service dogs and mentioned that the dogs must be registered with the ADA. SUF ¶31. The Board also opined that the Virgin Islands does not have guidelines for "service dogs." *Id.* Although the Board discussed Walters' request for reasonable accommodation, they took no action on Walters' application, even though it had been pending before them for more than six months. *Id.*

Cowpet's members began posting on the internet about Walters' request and medical condition on the "Cowpet Bay West Blog," ("the Blog") which was a website owned and run by Defendant Lance Talkington ("Talkington"). SUF ¶¶32, 33. Defendants Felice, Talkington, and Max Harcourt ("Harcourt") subsequently went on a campaign among Cowpet's members to intimidate, discredit, and harass Walters because of her requested accommodation. SUF ¶¶40, 43, 44, 47. Cowpet's members attacked the request, questioning the dog's "qualifications," and Harcourt later shared the content of Walters' application and her mental condition that supported it. SUF ¶¶55, 63, 68. Indeed, Cowpet admits: (1) a majority of its members were opposed to having dogs on the premises that were owned by non-handicapped members and that its membership sent emails and commented on the blog asserting that Walters' dog was not medically necessary and asking that fines be implemented; (2) Cowpet discussed amending the by-laws as a result; (3) the by-laws were subsequently amended by a member vote; and (4) it did not grant Walters' request for accommodation until March of 2012. SUF ¶¶33, 35, 40, 56, 77, 80, 117. Felice posted comments on the blog asserting that the FHA

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 3 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*                          Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                              Page 3

is a "BAD LAW!!!!!" that allows a person with mental illness who "might go off his/her gourd" to have a "pet." SUF ¶43.

On December 16, 2011 the Board received a letter from Karin A. Bentz, Esq on behalf of Walters. SUF ¶84. In this letter, Attorney Bentz informed the Board that under the FHA, Walters is qualified to keep Happy to assist her with her disability. *Id*. The Board was further advised that they could not engage in any conduct that would punish or deprive Walters of her right to keep Happy on the premises. *Id*. On January 11, 2012, in response to all the complaints, the Board met and voted to fine Walters $50 a day for having her emotional support animal. SUF ¶86. Then, in February, the Board voted to incorporate the no-dogs rule into Cowpet's by-laws and to submit them to the membership for approval. SUF ¶111. The amended by-laws provide that an exception would be granted "should an owner require the assistance of a service animal (dog) as defined by the ADA." SUF ¶77. It did not include an exception for a reasonable accommodation for an emotional support animal under the FHA. SUF ¶77.

In the year since Walters began her long and painful process of her request for the accommodation the Board, as advised by Defendant Vincent Verdiramo ("Verdiramo"), made no allowances for emotional support animals under the FHA. Finally, on March 26, 2012 Defendants granted Walters' request for a reasonable accommodation to keep her emotional support animal in her apartment. Walters suffered such a prolonged pattern of harassment and vilification by Defendants, including Felice, on the Blog and through emails that her suffering became unbearable and on or about April 22, 2014 she took her own life. SUF ¶123.

**PROCEDURAL BACKGROUND**

On April 9, 2012 Walters commenced an action in the District Court of the Virgin Islands alleging claims under the Fair Housing Act and Fair Housing Amendments Act (jointly "FHA") as well as under Virgin Islands law. The amended, and therefore operative, complaints

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 4 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*     Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice     Page 4

were filed March 11, 2013. Felice[2] answered the initial complaint on May 30, 2012 and the rest of the Defendants filed their respective answers on April 14, 2014. On or about May 1, 2014 Defendants Cowpet, Robert Cockayne ("Cockayne"), Harcourt, and Verdiramo filed motions for summary judgment, each of which was opposed. Defendants' motion was granted and Plaintiff timely appealed. On March 31, 2017 the Third Circuit issued its Opinion reversing in part and vacating in part the decision of this Court. On July 3, 2019 Plaintiff filed a Revised Third Amended Complaint to remove twelve (12) counts.

Plaintiff now files this Motion for Summary Judgment on the grounds that there is no genuine issue as to any material fact. Felice's campaign of personal attacks against Walters not only constitutes interference of her rights under the FHA but also intentional infliction of emotional distress. As a result of the Defendant's actions, Walters suffered damages including but not limited to emotional distress, embarrassment, and humiliation.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if all the probative materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Hershey v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). In determining whether there are genuine issues of material fact, the court must resolve all reasonable doubts in favor of the nonmoving party. *See Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n.2 (3d Cir. 1983); *Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

Under the standards announced by the Supreme Court's trilogy in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and

---

[2] A notice of death was filed for Alfred Felice prior to the filing of a second amended complaint.

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 5 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*                Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                    Page 5

*Matsushita*, 475 U.S. 574 (1986), "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. Indeed, where the moving party has made a properly supported motion for summary judgment, it is incumbent upon the nonmoving party to come forward with specific facts to show that there is a genuine issue of material fact for trial. *See id.* at 248. Thus, once the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleadings, Fed. R. Civ. P. 56(e), but must produce sufficient evidence that will reasonably support a jury verdict in its favor, *see id.* at 249; *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring), and not just some "metaphysical doubt as to material facts." *Matsushita*, 475 U.S. at 586; *see also Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991) (in opposing summary judgment, a non-movant may not "rest upon mere allegations, general denials, or ... vague statement"); *Schoch v. First Fidelity Bancorpration*, 912 F.2d 654, 657 (3d Cir. 1990) (stating that "unsupported allegations in [a non-movant's] memorandum and pleadings are insufficient to repel summary judgment").

A dispute involving a material fact is "genuine" only "if the evidence is such that a reasonable jury would return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Whether a fact is "material" is determined by the substantive law defining the claims. *See id.* at 248. As the Supreme Court has observed, "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude an entry of summary judgment." *Anderson*, 477 U.S. at 248-49.

Moreover, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Consequently, the court must ask whether, on the summary judgment record,

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 6 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*           Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                Page 6

"reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 860 (3d Cir. 1990).

## ARGUMENT

**I.     DEFENDANT FELICE INTERFERED WITH WALTERS' EXERCISE OF HER FAIR HOUSING RIGHTS IN VIOLATION OF 42 U.S.C. § 3617**

Under the Fair Housing Act, "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." 42 U.S.C. § 3617.

"A Section 3617 interference claim requires proof of three elements: (1) that the plaintiff exercised or enjoyed 'any right granted or protected by' Sections 3603-3606; (2) that the defendant's conduct constituted interference; and (3) a causal connection existed between the exercise or enjoyment of the right and the defendant's conduct." *Revock*, 853 F.3d at 112-13 (*citing* 42 U.S.C. § 3617); *see also* Quid Pro Quo and Hostile Environment Harassment and Liability for Discriminatory Housing Practices Under the Fair Housing Act, 81 Fed. Reg. 63054, 63059 (Sept. 14, 2016).

Since the FHA does not define the terms "intimidate", "threaten" or "interfere" the words must be "understood by [their] ordinary meaning." *United States v. Piekarsky*, 687 F.3d 134, 145 (3d Cir. 2012) (*cited by Revock* at 113). "Interference under Section 3617 may consist of harassment, provided that it is 'sufficiently severe or pervasive' as to create a hostile environment." *Revock*, 853 F.3d at 113 (*citing Quigley v. Winter*, 598 F.3d 938, 947 (8th Cir. 2010)); *see also Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). This has been recognized as a cause of action in numerous Circuits. *Revock*, 853 F.3d at 113 ("Numerous decisions of our sister Circuits have recognized such a cause of action in the housing context."); *See also*

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 7 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*                     Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                         Page 7

*Neudecker v. Boisclair Corp.*, 351 F.3d 361, 364 (8th Cir. 2003); *Bloch*, 587 F.3d at 783; *Quigley*, 598 F.3d at 946; *Krueger v. Cuomo*, 115 F.3d 487, 491 (7th Cir. 1997); *DiCenso v. Cisneros*, 96 F.3d 1004, 1008 (7th Cir. 1996); *Honce*, 1 F.3d at 1090. "Harassment that intrudes upon the 'well-being, tranquility, and privacy of the home' is considered particularly invasive." *Revock*, 853 F.3d at 113 (*citing Frisby v. Schultz*, 487 U.S. 474, 485(1988) (citation omitted)). Interference encompasses more than physical force or intimidation. *See, e.g., Mich. Protection & Advocacy Serv.*, *Inc. v. Babin*, 18 F.3d 337, 347 (6th Cir. 1994) ("Section 3617 is not limited to those who used some sort of potent force or duress, but extends to other actors who are in a position directly to disrupt the exercise or enjoyment of a protected right and exercise their powers with a discriminatory animus.").

      The language of the FHA is to be interpreted in a broad and inclusive manner. *See, e.g., Trafficante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 209 (1972); *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001). "Interference" has been broadly applied to reach all practices which have the effect of interfering with the exercise of rights under federal fair housing laws. *Id*. Interference is the act of meddling in or hampering an activity or process. *Id*.

      As the Third Circuit opinion in this case pointed out, since HUD issued its decision in December 2011 it has issued a regulation providing that Section 3617 may be violated by "hostile environmental harassment because of . . . handicap." 24 C.F.R. § 100.600(a) (2016). This regulation provides, in pertinent part, that "[h]ostile environment harassment refers to unwelcome conduct that is sufficiently severe or pervasive as to interfere with: The availability, sale, rental, or use or enjoyment of a dwelling; the terms, conditions, or privileges of the sale or rental, or the provision or enjoyment of services or facilities in connection therewith." *Id.* Harassment can be "written, verbal, or other conduct." *Id.* Whether hostile environmental harassment exists depends on the totality of the circumstances. Factors include: "the nature of

Case: 3:12-cv-00024-RAM-RM Document #: 303 Filed: 01/31/20 Page 8 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*     Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice     Page 8

the conduct, the context in which the incident(s) occurred, the severity, scope, frequency, duration, and location of the conduct, and the relationships of the persons involved." *Id*. "Neither psychological nor physical harm must be demonstrated to prove that a hostile environment exists." *Id.* "Whether unwelcome conduct is sufficiently severe or pervasive as to create a hostile environment is evaluated from the perspective of a reasonable person in the aggrieved person's position". *Id.* In addition, "[a] single incident of harassment because of race, color, religion, sex, familial status, national origin, or handicap may constitute a discriminatory housing practice, where the incident is sufficiently severe to create a hostile environment, or evidences a quid pro quo." *Id.*

        A.    **Walters exercised rights protected by the FHA**

It is undisputed that Walters is handicap. Under the definitions established in the FHA, a "handicap" means, "a physical or mental impairment which substantially limits one or more of such person's major life activities." 42 USC § 3602(h). There must be "a record of having such an impairment, or being regarded as having such an impairment." 42 USC § 3602(h). "The term 'physical or mental impairment' includes, but is not limited to, any mental or psychological disorder, such as 'emotional or mental illness.'" *Nelson*, 2016 WL 4154708 at *17 (*citing* 24 C.F.R. § 100.201(a)(2)). In *Nelson*, this Court held that an anxiety disorder and depression that interfered with plaintiff's daily life activities constituted a handicap under the FHA. *Nelson*, at *21 ("Accordingly, the Court concludes that Nelson suffers from an anxiety disorder and depression; that these mental impairments substantially limit Nelson's ability to sleep, concentrate, communicate, and interact with others; and that Nelson is therefore handicapped within the meaning of the FHA.").

Likewise, in this case, Plaintiff has been diagnosed with an anxiety disorder. SUF ¶¶ 2-5. On January 21, 2011 Stanford Sutherland, a licensed professional counsellor, wrote a letter stating that he was treating Walters and that she was diagnosed with Anxiety Disorder, citing

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 9 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*   Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice   Page 9

DSM-IV.[3] SUF ¶2. Walters had "severe limitations" in coping with stress and anxiety that most people would consider "normal day to day events." SUF ¶3. Walters was prescribed the use of an emotional support animal, dog or other, to alleviate her symptoms. SUF ¶4. Walters was also seen by Dr. AnnaMarie Resnikoff in New Jersey who wrote a letter on November 2, 2011 stating that Walters needed a service dog for her condition. SUF ¶5. Due to Walters' ongoing anxiety she also sought treatment in January 2012 from Dr. Sheena M. Walker, Ph.D. ("Walker") a licensed clinical psychologist in St. Thomas. Walker conducted a clinical evaluation of Walters and diagnosed her with a major depressive disorder. SUF ¶105.

Due to this anxiety disorder, Plaintiff is considered handicapped. Defendant has never disputed this and the Third Circuit has confirmed that "[t]here is no dispute that Walters and Kromenhoek are disabled…" *Revock v. Cowpet Bay West Condominium Association*, 853 F.3d 96, 111 (3d. Cir. 2017). Given this holding from the Third Circuit there is no dispute as to the fact that Walters was handicapped within the meaning of the FHA.

As a result of having a handicap, two of the activities Walters engaged in are protected by the FHA. Requesting a reasonable accommodation constitutes a protected activity. *See, e.g., Donovan v. Woodbridge Maint. Ass'n,* 2015 WL 1241020, at *4 (E.D.Cal. Mar. 17, 2015) ("Protected activities [under the FHA] include the request for a reasonable accommodation for handicapped persons.") (internal citations omitted); *Wilson v. Wilder Balter Partners, Inc.,* 2015 WL 685194, at *12 (S.D.N.Y. Feb. 17, 2015) ("[A] request for a reasonable

---

[3] Mr. Sutherland's practice, Chilhowee Psychological Services in Colorado, follows a thorough and ethical procedure for diagnosing patients. First, patients must complete a "12 component online test battery, which includes clinical session questions to collect background information, tests to assess current functioning, and a thorough medical and mental health history". Next "a licensed mental health professional (LMHP) reviews the results of each test, paying particular attention to the client's subjective responses and medical/mental health history. Using the test results and other ancillary information (e.g., information from other health care providers, etc.) as a foundation, the licensed mental health professional will contact the client to establish a series of telephone and/or Skype counseling sessions to further evaluate his/her mental and emotional status. These counseling sessions are required to formulate an informed disability determination and cannot be bypassed." *See* Website of Chilhowee Psychological Services at: https://www.cptas.com/pk.html (last accessed 11/3/2019)

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 10 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*   Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice   Page 10

accommodation is [a] protected activity under the FHA.") (internal quotation marks omitted); *see also, Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35 (2d Cir. 2002). Filing an administrative complaint also constitutes a protected activity. *See, e.g., Miller v. Bd of Managers of Whispering Pines at Colonial Woods Condo, II*, 457 F. Supp. 2d 126, 131 (E.D.N.Y. 2006) (A protected activity under the FHA "includes an action taken to protest or oppose statutorily prohibited discrimination."). Defendant Felice has not contested that Walters' is handicapped nor has he disputed that Walters requested a reasonable accommodation and filed an administrative complaint with HUD or that these were protected activities. Thus, the first element of a claim under 42 U.S.C. § 3617 is met.

      B.     **Defendant interfered with Walters' FHA rights**

Section 3617 prohibits a third party from interfering with an individual's exercise of her right to be free from discriminatory housing practices which is exactly what Felice did. *See, e.g., Schroeder v. De Bertolo*, 879 F.Supp. 173, 177 (D.P.R. 1995). Soon after Walters brought Happy to live with her at Cowpet Bay West Condominiums in July 2011, and after her request to the Association for a reasonable accommodation to keep him, Felice, who is a member of the Association and not the Board, began a campaign to discredit Walters and her application via emails and Talkington's blog. SUF ¶¶32, 43-45, 82, 85, 91, 96, 103.

Confusing service dogs with emotional support animals, Felice complained on the Blog that "anyone can get such a designation by a simple request from a friendly physician, regardless of any real need. Anyone can also get one via the internet for a minimal fee!!!" SUF ¶43. Several Owners, including members of the Board, began commenting on the Blog about the presence of dogs at Cowpet Bay West and their objections to dogs on the premises. SUF ¶80. The prevailing sentiment shared by members of the Association, including Felice, and members of the Board was that Plaintiff was not deserving of a waiver because there were no physical manifestations of her disability. SUF ¶80. Detailed information about the Board's

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 11 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*  Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice  Page 11

position and Plaintiff's application was posted on the Blog, leaked to Talkington by certain members of the Board, including Harcourt. SUF ¶69. Members of the Association and even some Board members blogged vehemently against granting the waiver to allow Plaintiff to keep the emotional support dog on the premises on the basis that Plaintiff had not met the requirement of a service animal as defined by the ADA. SUF ¶32. Stoked by Felice, some members of the Association and certain members of the Board began posting, almost daily, hateful and defamatory blog entries about Plaintiff on the Blog. SUF ¶32.

Exemplifying the type of discriminatory attitude that the FHA and the ADA were enacted to combat, Felice wrote on the Blog that "the perpetrators might just as well spit in our face" and he encouraged the Cowpet community to ostracize Walters. SUF ¶44. In response to increasing attacks by both Talkington and Felice on the blog regarding her application, Walters explained that she was not violating the law or the rules. Walters stated that she has a disability that is afforded protection under the FHA. SUF ¶45. Felice and others suggested retaliating against Walters by defeating her in the upcoming election. In response to Talkington's blog, in December 2011 Felice notes "that a change to the by-laws may be necessary and that the Owners should 'WAKE UP START A CAMPAIGN FOR A NO DOGS SLATE NOW.'" SUF ¶82. Then in January he emailed to the community: "PLEASE do not return the coven and their shills to office, they DO NOT deserve another term EVER." SUF ¶85. In a January 10, 2012 blog, Felice continues, "JUDI and BARBARA have DOGS!!!! They surely have an agenda and DICK is their SHILL." SUF ¶91. In two more emails in January Felice referred to Walters and Kromenhoek as a "coven" with their "shill" (SUF ¶¶85, 91) and again encouraged the community to ostracize Walters.

It is clear that Felice's persistent and angry emails and comments on the Blog constitute "a pattern of harassment, invidiously motivated," that was designed to interrupt and interfere with Walters' use and enjoyment of her dwelling. *See King v. Metcalf 56 Homes Ass'n*,

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 12 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*  Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice  Page 12

*Inc.*, 385 F. Supp. 2d 1137, 1144 (D. Kan. 2005) (holding on a summary judgment motion, that a neighbor's persistent complaints represented a "severe and pervasive pattern of harassing plaintiff that was designed to interfere with plaintiff's enjoyment of her dwelling").

Defendant will likely try to argue that the posts were nothing more than "unfortunate skirmishes between neighbors, tinged with discriminatory overtones or occasional discriminatory overtones" and thus do not fall under the FHA. While Walters agrees that unfortunate skirmishes are not covered under the FHA, the conduct that Walters complained of is more than that. The lines between permissible and impermissible conduct, however, are not so easily drawn. *See People Helpers, Inc. v. City of Richmond*, 789 F.Supp. 725, 733 n.5 (E.D.Va. 1992). Neither the cases nor the legislative history of §3617 attempt to define the minimum level of interference, intimidation or coercion necessary to violate the statute. Thus, the substantive issue before this Court is whether Defendant's conduct amounts to 'threatening, intimidating or interfering" within the meaning of the statute and the regulation.

    C.    **There was a causal connection between Walters' exercise of her fair housing rights and Felice's conduct**

Felice's harassment was in direct response to Walters' exercise of her rights under the FHA. It was because Walters had requested to keep an emotional support animal on the premises that Felice so vehemently attacked her. Felice's intimidating and harassing messages, in conjunction with those of other residents, directly resulted in Walters being unable to enjoy her home. Hence, there was a direct and undeniable causal connection between Felice's conduct and Walters' exercise of her fair housing rights. As such, there is no dispute of material fact that Felice violated 42 U.S.C. § 3617 and summary judgment on Count IV should be granted.

**II.    FELICE IS LIABLE FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

This Court has adopted the standard for intentional infliction of emotional distress set forth in Section 46(1) of the Restatement (Second) Torts: "One who by extreme and outrageous

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 13 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*                    Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                      Page 13

conduct intentionally or recklessly causes severe emotional distress to another is subject to liability." *Desir v. Hovensa, L.L.C.*, CIVIL 2007/97, 2012 WL 762122 (D.V.I. Mar. 7, 2012). Recovery for intentional infliction of emotional distress "is limited to situations where 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.'" *Id.* (*quoting* Restatement (Second) Torts § 46, cmt. d); *see also Petersen v. First Fed. Sav. & Loan Ass'n of P.R. Inc.,* 617 F.Supp. 1039, 1042 ("The plaintiff must make a showing that defendant's conduct was so outrageous that no reasonable person in a civilized society should be expected to endure it.").

Substantively, the Court is to consider whether Defendant's conduct was so outrageous that no reasonable person in a civilized society should be expected to endure it. Where reasonable persons may differ, it is for the finder of fact, in this case the Judge, to determine whether the conduct is sufficiently extreme and outrageous so as to result in liability. *Motheral v. Burkhart,* 583 A.2d 1180, 1188 (Pa.Super. 1990). Such emotional damages are available for distress which exceeds the normal transient and trivial aggravation attendant to securing suitable housing. *Morgan v. Sec'y of Hous. & Urban Dev.,* 985 F.2d 1451, 1459 (10th Cir. 1993).

Generally, conduct would be found to be actionable where the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Restatement (Second) of Torts §46. Certainly, Felice's action may be considered outrageous by a reasonable person. Emotional harm has been generally classified as "humiliation, embarrassment, emotional distress, and other such intangible harms to plaintiff's personality." *Krueger v. Cuomo,* 115 F.3d 487, 492 (7th Cir. 1997). The more inherently degrading or humiliating the defendant's action is, the more reasonable it is to infer that a person would suffer humiliation or distress from that action;

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 14 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*  Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice  Page 14

consequently, somewhat more conclusory evidence of emotional distress will be acceptable to support an award for emotional damages. *Id.* The distress that Plaintiff felt exceeds the normal transient and trivial aggravation attendant to securing suitable housing.

Felice's inflammatory Blog comments and emails were done with reckless and deliberate indifference to a substantial probability that severe emotional distress would result to Walters. Felice's conduct was so outrageous that no reasonable person should have been expected to endure it. As a result, Plaintiff became even more depressed and felt ostracized from the community because the blog posting led to her losing some dear friends. SUF ¶¶97, 106. Additionally, the posting of Plaintiff's personal and private information on the internet, was a major stressor for Plaintiff. SUF ¶¶97, 106. Each of Defendant's emails and Blog comments, taken alone or considered together as part of a course of conduct, is sufficiently outrageous to state a claim for intentional infliction of emotional distress. There is no dispute of material fact regarding Plaintiff's claim of intentional infliction of emotional distress against Defendant Felice and as such, this Court should grant Plaintiff's motion for summary judgment against Felice on Count VII of the Revised Third Amended Complaint.

## CONCLUSION

Plaintiff has shown that there is no dispute of material fact regarding Defendant Alfred Felice's interference of Plaintiff's rights under the FHA in violation of 42 U.S.C. § 3617. The record also shows that there is also no dispute of material fact that Felice intentionally inflicted emotional distress on Plaintiff.

**WHEREFORE**, for the foregoing reasons, the Plaintiff, respectfully requests that this Court **GRANT** Plaintiff's Motion for Summary Judgment against Felice on Counts IV and VII of Plaintiff's Revised Third Amended Complaint and order a Jury trial on damages.

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 15 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*                                      Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice                                Page 15

Respectfully Submitted,

**LAW OFFICES OF KARIN A. BENTZ, P.C.**

Dated: January 31, 2020          /s/ Karin A. Bentz
**Karin A. Bentz, Esq. (V.I. Bar No. 413)**
7605 Bonne Resolution
St. Thomas, VI 00802-6309
Telephone: 340-774-2669
Email: kbentz@virginlaw.com

Case: 3:12-cv-00024-RAM-RM   Document #: 303   Filed: 01/31/20   Page 16 of 16

*Liana Revock v. Cowpet Bay West Condominium Assoc., et al.*   Civil No. 12-00024
Memorandum in Support of Motion for Summary Judgment against Felice   Page 16

## CERTIFICATE OF SERVICE

I hereby certify that I caused the filing and service of the foregoing with the Clerk of the District Court of the Virgin Islands using the CM/ECF system, which will provide electronic notice by email to the following.

Richard P. Farrelly, Esq.
Birch de Jongh & Hindels, PLLC
1330 Taarneberg
St. Thomas, VI 00802
E-mail: rfarrelly@bdhlawvi.com

Kyle T. Berglin, Esq.
Boyd Richards Parker & Colonnelli, P.L.
100 S.E. Second Street, Suite 2600
Miami, FL 33131
kberglin@boydlaw.group.com

John Benham, III, Esq.
The Law Office of John H. Benham P.C.
P. O. Box 11720
St. Thomas, VI 00801
E-mail: jhbenham@wattsbenham.com

Ryan S. Meade, Esq.
Quintairos, Prieto, Wood and Boyce, P.A.
9300 South Dadeland Blvd., 4th Floor
Miami, FL 33156
E-mail: rmeade@qpwblaw.com

/s/ Karin A. Bentz