IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DISTRICT OF ST. THOMAS AND ST. JOHN

*****************

| | | |
|---|---|---|
| **LIANA REVOCK, Executrix of the Estate of BARBARA WALTERS,** | ) ) ) | CIVIL NO. 3:12-cv-00024 |
| Plaintiff, | ) ) ) ) | Action for: Housing Discrimination; Intentional Infliction of Emotional Distress; |
| v. | ) ) | |
| **ESTATE OF ALFRED FELICE** | ) ) | |
| Defendant. | ) ) | **JURY TRIAL DEMAND** |

**PROPOSED JOINT FINAL PRE-TRIAL ORDER**

    **COMES NOW** Plaintiff, **LIANA REVOCK,** Executrix of the Estate of **BARBARA WALTERS,** ("Walters" or "Plaintiff") by and through her undersigned counsel, **LAW OFFICES OF KARIN A. BENTZ, P.C.**, (Karin A. Bentz, Esq.), and the ESTATE OF ALFRED FELICE ("Felice" or "Defendant") by and through its undersigned counsel, **RYAN MEADE CHARTERED ATTORNEY, LLC,** (Ryan Meade, Esq.), and hereby submits their Joint Final Pretrial Order pursuant to Rule 16 of the Federal Rules of Civil Procedure and the Third Amended Scheduling Order. This Joint Final Pretrial Order shall govern the conduct of the trial of this case.

**APPEARANCES:**

| | |
|---|---|
| Karin A. Bentz, Esq. | Ryan C. Meade, Esq. |
| Law Office of Karin A. Bentz | Ryan Meade Chartered Attorney, LLC |
| 7605 Lower Hull | 6115 Estate Smith Bay, Suite 315 |
| St. Thomas, Virgin Islands 00802 | St. Thomas, VI 00802 |
| Telephone: 340-774-2669 | Telephone: 305-924-7286 |
| Email: kbentz@virginlaw.com | Email: ryanm@rmcalaw.com |
| **Attorney for Plaintiff** | **Attorney for Defendant** |

## I.      NATURE OF THE ACTION AND JURISDICTION OF THE COURT

This Court has jurisdiction of the claims herein pursuant to 28 U.S.C.§§1331, 1332 and 1337. This civil action arises under the laws of the United States. Plaintiff alleges a violation of her rights under the Federal Fair Housing Act, 42 U.S.C. §§3601-3631. Plaintiff also asserts a supplemental Territorial Law claim for Intentional Infliction of Emotional Distress. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## II.     FACTUAL CONTENTIONS

### A.   Plaintiff

1.   Walters owned a condominium at Cowpet Bay West on the east side of St. Thomas, United States Virgin Islands.

2.   On December 15, 2010 Stanford Sutherland ("Sutherland"), a licensed professional counselor, wrote a letter stating that he was treating Walters and that she was diagnosed with Anxiety Disorder, citing DSM-IV. He wrote that Walters had "severe limitations" in coping with stress and anxiety that most people would consider "normal day to day events."

3.   Walters was also seen by Dr. AnnaMarie Resnikoff in New Jersey on March 16, 2011 who wrote a letter on November 2, 2011 stating that Walters needed a service dog for her condition.

4.   Sutherland prescribed the use of an emotional support animal for Plaintiff and concluded that pursuant to the FHA she was qualified to keep her emotional support animal despite a policy prohibiting pets in her housing.

5.   In February 2011, Walters made a request to the Board and the Cowpet Bay West Condominium Association ("Cowpet" or the "Association") to be allowed to keep an emotional support dog in her Cowpet condominium.

6. In July 2011 Walters brought her dog Happy to live with her.

7. The Board met in June, twice in July and once in August, but did not act on Walters' application for reasonable accommodation.

8. During the Board meeting on September 13, 2011, the Board discussed service dogs and mentioned that the dogs must be registered with the ADA. The Board also opined that the Virgin Islands does not have guidelines for "service dogs." Although the Board, headed by Harcourt, discussed Walters' request for reasonable accommodation, the Board took no action on Walters' application, even though it had been pending before them for more than six months.

9. At all relevant times, some members of the Association, and even the Board, were vehemently opposed to having dogs on the premises. Members of the Association and the Board began voicing their oppositions to allowing dogs on the premises through emails and on the the Cowpet Bay West Blog ("the blog"). They also began harassing Walters. At all relevant times, Lance Talkington ("Talkington") owned and administered the Blog.

10. In his first blog post relating to "dogs" on the premises, Talkington, on September 27, 2011, stated that "at least three owners . . . have been seen with dogs that are either living in condos or are being entertained by an owner walking them on the property."

11. He went on to point out that two of the dog owners are present and past Board members. Talkington called for the members of the Association to amend the Association's by-laws to "eliminate any confusion over possible exceptions to the general rule" of no dogs.

12. At the October 11, 2011 Board meeting, the Board, headed by Harcourt, took no action on Plaintiff's pending application for reasonable accommodation, However, the Board under Harcourt's leadership, discussed changing the by-laws to adopt a NO DOGS ALLOWED rule.

13. By this point, the fact that Plaintiff had submitted paperwork to the office to request a reasonable accommodation was also known by residents of Cowpet who were non-Board members.

14. One resident, using the name "Anonymous" responded to Talkington's blog by advising that Talkington file an official complaint with the board as the "best approach to seeing her papers".

15. Felice chimed in on the blog and stated that "service dogs for true needs are legal, but anyone can get such a designation by simple request from a friendly physician, regardless of any real need. Anyone can also get one via the internet for a minimal fee!!!"

16. Felice posted that the FHA is a "BAD LAW!!!!!" that allows a person with mental illness who "might go off his/her gourd" to have a "pet."

17. Felice does not deny what he said on the blog and in emails.

18. Exemplifying the type of discriminatory attitude that the FHA and the ADA were enacted to combat, Felice went on to say that "the perpetrators might just as well spit in our face. The by-laws must be made to reflect the majorities' rights. Perhaps, the dissenters would be happier in another community rather than be ostracized at CBW, which would be another fine recourse."

19. In response to increasing attacks by both Talkington and Felice on the blog regarding her application, Walters explained that she was not violating the law or the rules. Walters stated that she has a disability that is afforded protection under the FHA.

20. Walters blogged that she was on permanent disability and received social security benefits.

21. The Board held at least three meetings in December of 2011 but took no action on

Plaintiff's pending application for reasonable accommodation.

22. Walters was running as candidates in the upcoming Board election. Felice and others suggested retaliating against Plaintiff by defeating her in the upcoming election. In response to Talkington's blog, Felice notes "that a change to the by-laws may be necessary and that the Owners should 'WAKE UP START A CAMPAIGN FOR A NO DOGS SLATE NOW.'"

23. As punishment for having Oliver and Happy on the premises, members of the Association banded together with some members of the Board to destroy Plaintiffs' candidacy for the Board.

24. In a January 9, 2012 email, Felice states "PLEASE do not return the coven and their shills to office, they DO NOT deserve another term EVER."

25. In a January 10, 2012 blog, Felice continues, "JUDI and BARBARA have DOGS!!!! They surely have an agenda and DICK is their SHILL."

26. On January 12, 2012 Walters filed a charge of discrimination under the FHA with the Department of Housing and Urban Development (HUD) against the Association and the Board for violation of the FHA.

27. In a January 14, 2012 email, Felice states "Only the coven and their shills call me a disaster." He goes on to say that if the Owners want a lot more "bull" "[e]lect the Coven on the board, with their shill."

28. On January 16, 2012, Felice emailed stating, "[t]he ADA law does not prevent a community from excluding DOGS." He goes on, "[n]o one wishes to prevent proper needs to be satisfied!!" He continues, "[a]gain REAL needs or pets??" He concludes, "I suggest they be ostracized, NO dinner dates, no patronage of their establishments, no conversations, no beach conclaves, just ignore them completely!!!"

29. By January 2012 the persistent harassment and vilification of Plaintiff and the publication of her private information on the internet, caused her to suffer extreme emotional distress.

30. On January 19, 2012, Plaintiff received a letter from the Board informing her that she was in violation of the no dogs rule and would be fined.

31. In a January 30, 2012 email, Felice wrote to 40 recipients, "How can you allow 2 admitted 'certified' mentally disabled persons on the ballot for election to our board?? Due diligence was not done properly. They should be removed from consideration."

32. The continued harassment of Plaintiff caused a deterioration in her mental state and a rise in her symptoms of depression at this time.

33. On January 30, 2012 Walters sought help from Dr. Sheena M. Walker, Ph.D. ("Walker") a licensed clinical psychologist in St. Thomas. Walker conducted a clinical evaluation of Walters and diagnosed her with a major depressive disorder.

34. One of the factors that Walker identified as contributing to Plaintiff's depression and causing her a great deal of stress was her treatment by her neighbors and her private information being shared on the internet.

35. On March 26, 2012 the Board met in a closed session and agreed to allow Plaintiff's a reasonable accommodation and to let her keep her dog on the premises.

36. On April 11, 2012 the Board finally mailed its response to Plaintiff approving her request for reasonable accommodation and waiving the fines they had imposed on her.

37. Walters suffered such a prolonged pattern of harassment and vilification by Defendants on the Blog and through emails that her suffering became unbearable. She had viewed St. Thomas as her safe haven, as a place of wellness and retreat, and that had been destroyed by

her treatment by her neighbors.

38. On or about April 22, 2014 she took her own life.

**B. Defendant**

1. Judith Kromenhoek was President of the CBWC Board of Directors [DE 415-7] at pp. 75:24-76:3.

2. Barbara Walters was a member of the CBWC Board of Directors. [DE 415-8].

3. Rule 6 of the CBWC Rules and Regulations says "Dogs and farm animals are prohibited, and owners will be fined as specified by the Board of Directors. The Association may require removal of any animal when it becomes bothersome to others, or is deemed by the Association to be unacceptable. See, October 20, 2011 email from Max Harcourt to Barbara Walters attached hereto and incorporated herein as Ex.1.

4. Prior to October 13, 2011, the Board was discussing changes to the By-Laws which would allow exceptions for true service animals that are documented and approved by application to the board. See, Ex.1.

5. CBWC had an online community blog hosted by Lance Talkington. [DE 306-1] at ¶6; [DE 415-21] at p.12:13-18.

6. On October 13, 2011 a thread was started on the Cowpet Bay West Blog titled "Bylaws and Puppy Dogs" seeking to elicit owner to weigh in on the bylaws while they're in the process of being rewritten, with ideas about how to formalize a workable written codification on the dogs policy. [DE 415-20]; [DE 415-21] at p.71:12-16.

7. Barbara Walters was a contributor to that blog. [DE 415-20]

8. Barbara Walters was a candidate for re-election in the CBWC Board Election and

campaigned on her own behalf [DE 415-24].

9. WALTERS alleges that on January 16, 2012, FELICE authored an email stating, "[t]he ADA law does not prevent a community from excluding DOGS." "[n]o one wishes to prevent proper needs to be satisfied!!" We do wish to prevent a large influx of PETS to invade our clean and tranquil property .Once there is a removal of our" no dogs policy", pets will abound and there will be no way to control their habits or their owners obeying the rules to maintain a clean quiet property II Check other "dogs allowed" properties (especially beach properties)and hear the terrible problems incurred by failure of owners to curb and control their pets !II Noise, smell, unpaid fines and in-your-face arrogance (we have that now!!).Again REAL needs for service are one thing, phony pets are another II You tell me what the 3 dogs on property are? Needs or pets?? How you do deal with arrogant rule breakers?? Talk about IN-YOUR-FACE, these three have some gall. We can make our rules effective with proper wording that is legal. We are not the only community faced with shams for pets. How do others attain their goals within the law? I am sure there is a legal way!! Short of that I suggest they be ostracized, NO dinner dates, no patronage of their establishments, no conversations, no beach conclaves, just ignore them completely!!!! Certainly do not reelect them!!!!! PASS THE BY-LAW CHANGE Vote for Doug, Ed and Herb. Board control helps, but a by-law change would be harder to overturn. Be serious, what do you want-VOTE." [DE 415-34]; [DE 422] at ¶45

10. FELICE advised WALTERS and others that "[n]o one wishes to prevent proper needs to be satisfied!!" [DE 415-34]; [DE 422] at ¶45.

11. FELICE advised WALTERS and others that his stated goal in opposing removal of the No Dogs Policy was because he "wish[ed] to prevent a large influx of PETS to invade our clean and tranquil property. [DE 415-34]; [DE 422] at ¶45.

12. FELICE advised WALTERS and others that there was a distinction to be made between "REAL needs for service [dogs]" and "phony pets" and that he was unaware of what the 3 dogs on property were. [DE 415-34]; [DE 422] at ¶45.

13. FELICE advised WALTERS and others that CBWC "can make our rules effective with proper wording that is legal." [DE 415-34]; [DE 422] at ¶45.

14. FELICE asked WALTERS and others how other communities faced with shams for pets attain their goals within the law. [DE 415-34]; [DE 422] at ¶45.

15. FELICE advised WALTERS and others that he believed there was a legal way to balance the No Pets Policy with owners who required service pets. [DE 415-34]; [DE 422] at ¶45.

16. FELICE advised WALTERS and others they should vote to pass a bylaw codifying the No Pets Policy. [DE 415-34]; [DE 422] at ¶45.

17. FELICE advised WALTERS and others to vote for Doug, Ed and Herb. In the upcoming Board election. [DE 415-34]; [DE 422] at ¶45.

18. On January 27, 2012 Kromenhoek shared campaign comments on behalf of herself and WALTERS' candidacies for CBWC Board by email to all CBWC owners by stating "[s]o I am asking you to vote for three of the following four: Ed Wardwell, Dick Lamoureux, Barbara Walters, or myself, Judi Kromenhoek." See January 27, 2012 email from Judith Kromenhoek attached hereto and incorporated herein as Ex.2.

19. Barbara Walters first presented to Dr. Sheena Walker January 30th of 2012 for depression management. [DE 415-35] at p. 20:12-18.

20. Barbara Walters presented seeking treatment for depression resulting from changes in her family structure as well as being a cancer survivor. [DE 415-35] at p. 22:12-23:18.

21. When Barbara Walters began treatment with Dr. Walker she was undergoing a

divorce and some repercussions for her family support. [DE 415-35] at p. 28:7-13.

    22.    WALTERS alleges she suffered from major depressive disorder which she considered a disability. [DE 415] at ¶53.

    23.    KROMENHOEK alleges Dr. Sheena Walker certified her diagnosis of depression. [DE 415] at ¶55.

    24.    KROMENHOEK alleges FELICE authored a January 30, 2012 email, referring to her as a "certified mentally disabled person." [DE 415] at ¶65.

### III. ADMISSIONS AND STIPULATIONS

The parties do not agree to stipulate the authenticity (relevancy, competency or admissibility) of any records produced in discovery and listed as exhibits.

### IV. STATEMENT OF DAMAGES

    **A.**    **Plaintiff**

        1.    That the Court declare that by his acts, and/or omissions and practices, Defendant has violated rights secured to Plaintiff by the FHA.

        2.    That the Court grants Plaintiff compensatory and punitive damages.

        3.    That the Court award Plaintiff pain and suffering damages.

        4.    That the Court grants Plaintiff her attorneys' fees, costs, and disbursements.

        5.    That the Court grant additional relief as the Court deems just and proper.

    **B.**    **Defendant**

None.

### V. STATEMENT OF LEGAL ISSUES PRESENTED

    **A.**    **Plaintiff**

1. Whether Plaintiff was disabled within meaning of FHA.

2. Whether Felice knew, or reasonably should have known of Plaintiff's disabilities.

3. Whether Plaintiff requested an accommodation that was both reasonable and necessary to allow her an equal opportunity to use and enjoy her housing unit.

4. Whether Felice violated Section 3617 of the FHA.

5. Whether Plaintiff suffered emotional distress as a result of Felice's conduct.

   B. **Defendants**

   1. Whether Plaintiff can establish a prima facie case of a violation of 42 U.S.C. § 3617.

   2. Whether the first amendment protects Alfred Felice's rights to advocate for his opinions on matters of public concern in the community of Cowpet Bay West Condominium.

   3. Whether Plaintiff can establish a prima facie case of Intentional Infliction of Emotional Distress.

VI. **LEGAL ISSUES, DEFENSE OF CLAIMS TO BE ABANDONED**

   Plaintiff:   None.

   Defendant:   None.


VII. **BIFURCATION**

   The issues of liability and damages should be tried together as opposed to separately.

VIII. **EXHIBITS**

   Plaintiff's portion of Exhibit List is attached hereto as Exhibit A.

   Defendant's Exhibit List is limited to impeachment and rebuttal exhibits.

## IX. ADDITIONAL DISCOVERY

Plaintiffs:   Plaintiffs have an outstanding Motion to take the oral depositions of Rosemary Felice and Laura Felice and an outstanding Motion for reconsideration of the denial of that Motion, docket Nos. 412 and 419.

## X. EXPERT WITNESSES

Plaintiff:   Dr. Sheena Walker

Defendant:   None.

## XI. NON-EXPERT WITNESSES

Plaintiff:

1. Liana Revock
2. Judith Kromenhoek
3. Roseann Wells
4. Louanne Schecter
5. Nicholas Overmyer
6. Lance Talkington
7. Rosemary Felice
8. Laura Felice
9. Cowpet Bay Condominium Association
10. Rebuttal and Impeachment Witnesses.

Defendant:

1. Cowpet Bay West Condominium Association
2. Ed Wardwell
3. Bill Canfield

4. Sharon Koehler

5. Doug Reback

6. Herb Horowitz

7. Lance Talkington

8. Robert Cockayne

9. Vincent Verdiramo

10. Rebuttal and Impeachment Witnesses

## XII. SPECIAL PROBLEMS

Plaintiff:   Walters is deceased; Felice is deceased. Plaintiff has waived her right to a jury trial but defendant has objected. It is Plaintiff's position that this Defendant has no standing to object to Plaintiff's waiver of a jury trial. There is a pending Motion for Summary Judgement, and Counter Motion to grant judgment independent of the motion pursuant to Fed.R.Civ.P. 56(f). If granted, the trial would be on damages only.

Defendant:   There is a pending Motion for Summary Judgement, and Counter Motion to grant judgment independent of the motion pursuant to Fed.R.Civ.P. 56(f). Defendant has a pending Motion in Limine to exclude evidence and witnesses which were not disclosed to the Estate during its pendency in the action. Plaintiff filed an opposition.

## XIII. ESTIMATED LENGTH OF TRIAL

Plaintiff:   3 days without jury selection. One day for jury selection.

Defendant:   4-5 days

## XIV. TRIAL BRIEFS AND REQUESTS TO CHARGE

The Parties will file joint written requests for charge to the jury as ordered by the court.

*Revock v. Estate of Alfred Felice*  Civil No. 3:12-cv-00024
Plaintiffs' Portion of Joint Final Pretrial Order  Page 14

## CONCLUDING CERTIFICATION

We hereby certify by the affixing of our signatures to the Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of the order prior to its submission to the court. Further, it is acknowledged that amendments to this Pretrial Order will not be permitted except where the court determines that manifest injustice would result if the amendment is not allowed.

/s/ Karin A. Bentz
/s/ Ryan C. Meade

Entry of the foregoing Joint Pretrial Order is hereby APPROVED this 14th day of March, 2022.

Robert A. Molloy
Judge of the District Court

A T T E S T:
Clerk of the Court

By:
    Clerk of the Court